UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X

LAMEL JEFFERY, THADDEUS BLAKE, CHAYSE
PENA, on Behalf of Themselves and Others Similarly
Situated,

                                        Plaintiffs,

                    -against-                                    20 CV 02843 (NGG)(RML)


THE CITY OF NEW YORK, BILL DE BLASIO,                            Service Date:
Mayor of New York City, Individually and in his                 December 10, 2020
Official Capacity, ANDREW CUOMO, Governor of the
State of New York, Individually and in his Official
Capacity, and P.O.s JOHN DOE #1-50, Individually and
in their Official Capacity, (the name John Doe being
fictitious, as the true names are presently unknown),

                                        Defendants.


---------------------------------------------------------------- x



# CITY DEFENDANTS' MEMORANDUM OF LAW IN
# SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT

                                        GEORGIA M. PESTANA
                        Acting Corporation Counsel of the City of New York
                                        Attorney for City Defendants
                                        100 Church Street
                                        New York, New York 10007
                                        (212) 356-4036



December 10, 2020

MICHELLE GOLDBERG-CAHN,
EDWARD L. MURRAY,
ERIN T. RYAN,
Of Counsel.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

RELEVANT FACTS ........................................................................................................... 3

STANDARD OF REVIEW .................................................................................................. 4

ARGUMENT ........................................................................................................................ 5

        POINT I

               THE EMERGENCY CURFEW WAS FULLY
               JUSTIFIED AND ADOPTED IN ACCORDANCE
               WITH APPLICABLE LAW ........................................................... 5

        POINT II

               AS THE EMERGENCY CURFEW WAS LEGAL,
               THE NAMED PLAINTIFFS' ARRESTS WERE
               VALID AND THEIR FALSE ARREST CLAIMS
               SHOULD BE DISMISSED. ......................................................... 17

        POINT III

               THE COURT SHOULD DISMISS THE
               COMPLAINT IN ITS ENTIRETY AS AGAINST
               MAYOR DE BLASIO IN HIS INDIVIDUAL
               CAPACITY ................................................................................. 19

           A.    Defendant de Blasio, in his individual capacity, is entitled to
                 qualified immunity for enacting the Emergency Orders ............... 19

           B.    Plaintiffs fail to allege that Defendant de Blasio acted or
                 failed to act in any way that would subject him to personal
                 liability for the enforcement the Emergency Orders .................... 20

        CONCLUSION ...................................................................................... 22

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                                                                  **Pages**

421-A Tenants Ass'n v. 125 Court St. LLC,
   760 Fed. Appx. 44 (2d Cir. 2019) ...........................................................................................9

Am. Civil Liberties Union. Inc. v. Chandler,
   458 F. Supp. 456 (W.D. Tenn. 1978)...........................................................................6, 7, 14

Ashcroft v. Iqbal,
   556 U.S. 662 (2009)...................................................................................................................4

Atwater v. City of Lago Vista,
   532 U.S. 318 (2001).................................................................................................................18

Back v. Hastings on Hudson Union Free School District,
   365 F.3d 107 (2d Cir. 2004).....................................................................................................21

Bell Atlantic v. Twombly,
   550 U.S. 544 (2007)...................................................................................................................4

Bernard v. United States,
   25 F.3d 98 (2d Cir. 1994)........................................................................................................18

Black v. Coughlin,
   76 F.3d 72 (2d Cir. 1996)........................................................................................................21

Bright v. Nunn,
   448 F.2d 245 (6th Cir. 1971) ...............................................................................................6, 7

Bykofsky v. Borough of Middletown,
   429 U.S. 964 (1976)................................................................................................................10

Calvary Chapel Dayton Valley v. Sisolak,
   140 S. Ct. 2603 (2020) (Alito, J., dissenting) .........................................................................6

Chambers v. Time Warner,
   282 F.3d 147 (2d Cir. 2002).....................................................................................................5

Cortec Indus. v. Sum Holding L.P.,
   949 F.2d 42 (2d Cir. 1991).......................................................................................................5

Devenpeck v. Alford,
   543 U.S. 146, 125 S. Ct. 588 (2004).......................................................................................17

Dwares v. City of New York,
   985 F.2d 94 (2d Cir. 1993)......................................................................................................20

**<u>Cases</u>**                                                                                    **<u>Pages</u>**

<u>Ervin v. State</u>,
    41 Wis. 2d 194 (Wis. 1968) ...................................................................................7

<u>Farrell v. Burke</u>,
    449 F.3d 470 (2d Cir. 2006)...............................................................................21

<u>Geller v. Cuomo</u>,
    2020 WL 4463207 (S.D.N.Y. Aug. 3, 2020) ....................................................11

<u>Glover v. District of Columbia</u>,
    250 A.2d 556 (D.C. Cir. 1968) .......................................................................5, 12

<u>Harlow v. Fitzgerald</u>,
    457 U.S. 800 (1982)...................................................................................... 19-20

<u>Hutchins v. District of Columbia</u>,
    188 F.3d 531 (D.C. Cir. 1999)...........................................................................13

<u>Joglo Realties, Inc. v. Seggos</u>,
    229 F. Supp. 3d 146 (E.D.N.Y. 2017) .................................................................5

<u>In re Juan C.</u>,
    28 Cal. App. 4th 1093 (Ca. 1994) .......................................................................7

<u>Luke's Catering Serv., LLC v. Cuomo</u>,
    2020 WL 5425008 (W.D.N.Y. Sept. 10, 2020) .................................................12

<u>Matusovsky v. Merrill Lynch</u>,
    186 F. Supp. 2d 397 (S.D.N.Y. 2002).................................................................5

<u>Menotti v. City of Seattle</u>,
    409 F.3d 1113 (9th Cir. 2005) ...........................................................................15

<u>Molinelli v. Tucker</u>,
    901 F.2d 13 (2d Cir. 1990).................................................................................20

<u>Moorhead v. Farrelly</u>,
    723 F. Supp. 1109 (D.V.I. 1989) ...................................................................7, 15

<u>Murphy v. Palmer</u>,
    2017 WL 2364195 (D.N.J. 2017) .......................................................................7

<u>N.Y. Pet Welfare Ass'n v. City of New York</u>,
    850 F.3d 79 (2d Cir. 2017)...................................................................................5

**Cases**                                                                                      **Pages**

Nieves v. Bartlett,
    139 S. Ct. 1715 (2019)..................................................................................19

S. Bay United Pentecostal Church v. Newsom,
    140 S. Ct. 1613 (2020) (Roberts, C.J., concurring) ....................................................6

Salmon v. Blesser,
    802 F.3d 249 (2d Cir. 2015).........................................................................19

Sazerac Co. v. Falk,
    861 F. Supp. 253 (S.D.N.Y. 1994) ...................................................................5

Scheuer v. Rhodes,
    416 U.S. 232 (1974)...................................................................................7

Singer v. Fulton County Sheriff,
    63 F.3d 110 (2d Cir. 1995)..........................................................................17

Smith v. Avino,
    866 F. Supp. 1399 (S.D. Fla. 1994)
    aff'd 91 F.3d 105 (11th Cir. 1996)..................................................................12

Smith v. Avino,
    91 F.3d 105 (11th Cir. 1996) .........................................................................7

State v. Dobbins,
    277 N.C. 484 (N.C. 1971).............................................................................7

Sterling v. Constantin,
    287 U.S. 378 (1932)...............................................................................7, 14

United States v. Chalk,
    441 F.2d 1277 (4th Cir 1971)
    cert. denied 404 U.S. 943 (1971) ...........................................6, 7, 11, 13, 15, 16, 17

Virginia v. Moore,
    553 U.S. 164 (2008)...............................................................................18-19

Weyant v. Okst,
    101 F.3d 845 (2d Cir. 1996).........................................................................18

Williams v. Citibank, N.A.,
    565 F. Supp. 2d 523 (S.D.N.Y. 2008)...............................................................5

Ying Jing Gan v. City of New York,
    996 F.2d 522 (2d Cir. 1993).........................................................................20

iv

| **Statutes** | **Pages** |
|---|---|
| 42 U.S.C. § 1983 | 20, 21 |
| Fed. R. Civ. Pro. 12(b)(6) | 1, 4, 9 |
| N.Y. Administrative Code § 3-108 | 16 |
| N.Y.C. Administrative Code § 3-104 *et seq.* | 8 |
| N.Y. Executive Law § 24(1) | 8 |
| N.Y. Executive Law § 24(5) | 16 |
| N.Y. P.L. § 70.15(2) | 18 |

**Other Authorities**

| | |
|---|---|
| Executive Order No. 122 | 16 |
| Executive Order No. 118 | 18 |
| Executive Order No. 119 | 18 |

UNITED STATES DISTRICT COURT
EASTERN DISTRICT COURT OF NEW YORK
------------------------------------------------------------------   x

LAMEL JEFFERY, THADDEUS BLAKE, CHAYSE
PENA, on Behalf of Themselves and Others Similarly
Situated,

                                                            Plaintiffs,

                        -against-                                        20 CV 02843 (NGG)(RML

THE CITY OF NEW YORK, BILL DE BLASIO, Mayor
of New York City, Individually and in his Official
Capacity, ANDREW CUOMO, Governor of the State of
New York, Individually and in his Official Capacity, and
P.O.s JOHN DOE #1-50, Individually and in their Official
Capacity, (the name John Doe being fictitious, as the true
names are presently unknown,

                                                            Defendants.

------------------------------------------------------------------   x


        Defendants, the City of New York ("City") and Bill de Blasio, Mayor of the City

of New York, individually and in his official capacity (collectively "City defendants"), by their

attorney, Georgia M. Pestana, Acting Corporation Counsel of the City of New York, submit this

memorandum of law in support of their Motion to Dismiss the Complaint ("Compl.") pursuant to

Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP").

                              **PRELIMINARY STATEMENT**

        On May 28, 2020, following months of restricted activity due to a global

pandemic, mass protests erupted in New York City (and all over the nation) in response to the

death of George Floyd while in custody of the Minneapolis Police Department. Although

initially peaceful, the Floyd protests were, as plaintiffs acknowledge, punctuated at night by

"severe instances of criminal behavior," including looting, property destruction, and violence, in

neighborhoods throughout the City. See Compl. ¶ 46. On June 1, 2020, after nights of escalating

criminal activity, Mayor de Blasio and Governor Andrew Cuomo announced that a citywide curfew would be in effect on June 1, 2020 from 11 p.m. to 5 a.m. Along with the announcement, Mayor de Blasio issued an Emergency Executive Order declaring an emergency and enacting the curfew. The violence, however, continued to escalate, including during nighttime hours outside of the curfew, leading Mayor de Blasio to issue a second Emergency Executive Order extending the declaration of emergency through June 8, 2020 and expanding the curfew to cover the hours of 8 p.m. through 5 a.m. Mayor de Blasio lifted the curfew on June 7, 2020, one day earlier than scheduled, finding that the restrictions could be safely ended.

In this putative class action, plaintiffs claim, among other things, that the temporary emergency curfew is unconstitutional and that the "millions of persons" affected by the curfew can thus recover damages from defendants. Plaintiffs' claims with respect to the constitutionality of the curfew are without merit and should be dismissed as against the City defendants. Plaintiffs do not dispute the existence of an emergency and thus the need for emergency measures. Indeed, the Complaint is notably silent regarding the City defendants' declaration of emergency. Plaintiffs also do not seriously claim that the City defendants enacted the temporary curfew for any reason other than to maintain civil order during an emergency situation. Plaintiffs' challenge is instead directed at the scope of the curfew, arguing that it was overbroad and opining that less restrictive alternatives, such as beginning the curfew at midnight, could have brought about order. Second-guessing the contours of the curfew, as plaintiffs would like, with the benefit of hindsight and far removed from the extremely volatile situation that existed on the City streets in the early days of June 2020, is entirely inappropriate and would severely undermine the wide latitude afforded the political branches of government in emergency situations. Rather it is clear from the facts presented in the Complaint and documents referred to

or incorporated by reference therein that there is factual basis for the City defendants' decision that the temporary emergency curfew was necessary to maintain public order and peace. Accordingly, the Court can easily grant judgment as a matter of law in favor of City defendants with respect to plaintiffs' challenges to the facial validity of the curfew under the First, Fourth, and Fourteenth Amendments.

Additionally, as the curfew was valid, the plaintiffs' false arrest claims fail.  In the Complaint, each named plaintiff admits to being outside of their residences past 8 p.m. for reasons that did not fall within any of the stated exceptions, an admission that they violated the curfew.  These violations of the curfew provided the police with probable cause for plaintiffs' arrests, a complete defense to the purported false arrest claims.  Accordingly, the Court should also dismiss these claims, with prejudice, in their entirety.

## **RELEVANT FACTS**

On June 1, 2020, Mayor de Blasio and Governor Andrew Cuomo announced that a citywide curfew would take effect at 11:00 p.m. on June 1, 2020 and continue through to 5 a.m. on June 2, 2020 "to protect against violence and property damage."  See Declaration of Edward L. Murray ("Murray Dec."), Exhibit B.  In conjunction with the announcement, Mayor de Blasio issued Emergency Executive Order ("EEO") No. 118, dated June 1, 2020, which states in relevant part:

> WHEREAS, peaceful demonstrations began in the City in response to the death of George Floyd, a Black man in Minneapolis who died after one or more officers knelt on his neck, the latest in a long line of deaths of Black men and women that have spurred protests across our nation, but demonstration activities were subsequently escalated, by some persons, to include actions of assault, vandalism, property damage, and/or looting; and
>
> WHEREAS, the City remains subject to State and City Declarations of Emergency related to the novel coronavirus disease, COVID-19; and

3

> WHEREAS, the violent acts have been happening primarily during the hours of darkness, and it is especially difficult to preserve public safety during such hours;
>
> WHEREAS, the imposition of a curfew is necessary to protect the City and its residents from severe endangerment and harm to their health, safety and property . . .

See Murray Dec., Ex. C.

On June 2, 2020, the Mayor issued EEO No. 119 extending the declaration of emergency through June 8, 2020, and expanding the daily curfew to cover the hours between 8:00 p.m. and 5:00 a.m. See Murray Dec., Ex. D. EEO Nos. 118 and 119 (collectively, "Emergency Orders") establish that a knowing violation of the curfew is a Class B misdemeanor.

On June 7, 2020, the Mayor issued EEO No. 122 to end the emergency declaration in Emergency Orders and lift the citywide curfew. The order stated, in relevant part, that the "restriction on the movement of persons and vehicles between the hours of 8:00 pm and 5:00 am can now be safely ended, effective immediately[.]"  See Murray Dec., Ex. E.

## **STANDARD OF REVIEW**

To survive a Rule 12(b)(6) motion to dismiss, a pleading must contain sufficient factual matter, accepted as true, so as to make a claim plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007). To meet the "facial plausibility" standard, a pleading must set forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. This standard requires a court to reject "threadbare recitals" of the elements of a cause of action "supported by mere conclusory statements," and requires "more than a sheer possibility that a defendant has acted unlawfully." Id.

In assessing a motion to dismiss under Rule 12(b)(6), a court may "consider the facts alleged in the complaint, documents attached to it or incorporated by reference, and matters

subject to judicial notice." <u>N.Y. Pet Welfare Ass'n v. City of New York</u>, 850 F.3d 79, 86 (2d Cir. 2017); <u>Chambers v. Time Warner</u>, 282 F.3d 147, 152-53 (2d Cir. 2002); <u>Cortec Indus. v. Sum Holding L.P.</u>, 949 F.2d 42, 46-48 (2d Cir. 1991); <u>Joglo Realties, Inc. v. Seggos</u>, 229 F. Supp. 3d 146, 148, n.3 (E.D.N.Y. 2017). Moreover, "if the allegations of a complaint are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the complaint." <u>Sazerac Co. v. Falk</u>, 861 F. Supp. 253, 257 (S.D.N.Y. 1994). Such contradicted allegations are "insufficient to defeat a motion to dismiss." <u>Matusovsky v. Merrill Lynch</u>, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002); <u>Williams v. Citibank, N.A.</u>, 565 F. Supp. 2d 523, 527 (S.D.N.Y. 2008).

Here, relying on the facts presented in the Complaint and documents referred to or incorporated by reference therein,[1] claims regarding the facial validity of the Emergency Orders as against the City defendants must be dismissed.

**ARGUMENT**

**POINT I**

**THE EMERGENCY CURFEW WAS FULLY JUSTIFIED AND ADOPTED IN ACCORDANCE WITH APPLICABLE LAW.**

In circumstances where temporary emergency measures are adopted to address civil unrest, judicial review is limited. While courts "would ordinarily consider the availability of other governmental responses which could end disorder yet place fewer restrictions on travel, free speech, and assembly," it is not so when addressing a "civil disorder once it has reached the emergency stage." <u>See</u> <u>Glover v. District of Columbia</u>, 250 A.2d 556, 560 (D.C. Cir. 1968).

---

[1] The Court may consider the documents annexed to the accompanying Declaration of Edward L. Murray, which are incorporated into the Complaint by reference therein. <u>See</u> Compl. ¶¶ 2, 15, 30.

Rather in such circumstances, a court must determine whether the State's "actions were taken in good faith and whether there is some factual basis for [the] decision that the restrictions [] imposed were necessary to maintain order." United States v. Chalk, 441 F.2d 1277, 1281 (4th Cir 1971) cert. denied 404 U.S. 943 (1971); see also Bright v. Nunn, 448 F.2d 245, 249 (6th Cir. 1971) (affirming a decision that officials who enacted a curfew acted properly and in good faith and that they were fully justified in doing so); Am. Civil Liberties Union. Inc. v. Chandler, 458 F. Supp. 456, 461 (W.D. Tenn. 1978).

The rationale for this type of review is grounded in the respective roles of political and judicial branches of government and the uncertainty that arises in times of civil disorder:

> [A]ny decision of when and how to exercise emergency restrictions to quell existing or prevent imminent civil disorder is a matter of judgment necessarily involving some speculation. . . . [W]e have no means of predicting precisely when major violence may erupt in a particular city. Nor do we have any means of measuring precisely the impact of any one emergency restriction on the level of or potential for violence. Whether the [emergency] measures employed . . . were absolutely necessary in order to prevent a serious civil disorder is clearly an important question for political debate, but not, we think, a question for judicial resolution[.]

Chalk, 441 F.2d at 12181-1282.

In short, as the "Constitution principally entrusts '[t]he safety and the health of the people' to the politically accountable officials of the States 'to guard and protect,'" S. Bay United Pentecostal Church v. Newsom, 140 S. Ct. 1613, 1613 (2020) (internal citation omitted) (Roberts, C.J., concurring)), the State is entitled to broad discretion when adopting temporary emergency measures. See Calvary Chapel Dayton Valley v. Sisolak, 140 S. Ct. 2603, 2605 (2020) (Alito, J., dissenting) ("In times of crisis, public officials must respond quickly and decisively to evolving and uncertain situations. At the dawn of an emergency . . . public officials may not be able to craft precisely tailored rules. . . . [A]nd those responsible for enforcement

may lack the resources needed to administer rules that draw fine distinctions."); Scheuer v. Rhodes, 416 U.S. 232, 247 (1974) ("[S]ince the options which a chief executive and his principal subordinates must consider [in moments of civil disorder] are far broader and far more subtle than those made by officials with less responsibility, the range of discretion must be comparably broad."); Sterling v. Constantin, 287 U.S. 378, 398 (1932) ("In the performance of its essential function, in promoting the security and well-being of its people, the State must, of necessity, enjoy a broad discretion.").

Contrary to plaintiffs' claim that "the imposition of oppressive restrictions like curfews . . . has almost always been resoundingly outweighed" by the personal freedoms guaranteed by the Constitution, see Compl. ¶ 24, what follows from the established case law is that courts have regularly concluded that temporary emergency measures, including temporary curfews, are valid.[2] See, e.g., Chalk, 441 F.2d 1277 (upholding curfew imposed to address civil disorder); Bright, 448 F.2d 245 (upholding curfew imposed to address civil disorder); Chandler, 458 F. Supp. 456 (upholding curfew imposed to address civil disorder); Smith v. Avino, 91 F.3d 105 (11th Cir. 1996) (upholding curfew imposed following a hurricane); Murphy v. Palmer, 2017 WL 2364195 (D.N.J. 2017) (upholding checkpoint imposed following a hurricane); Moorhead v. Farrelly, 723 F. Supp. 1109 (D.V.I. 1989) (upholding curfew imposed following a hurricane); In re Juan C., 28 Cal. App. 4th 1093 (Ca. 1994) (upholding curfew imposed to address civil disorder); State v. Dobbins, 277 N.C. 484 (N.C. 1971) (upholding curfew imposed to address civil disorder); Ervin v. State, 41 Wis. 2d 194 (Wis. 1968) (upholding curfew imposed to address

---

[2] City defendants are also unaware of any case in which a temporary emergency curfew was found unconstitutional such that all affected persons, here purportedly "millions of persons," could recover damages, i.e., the relief plaintiffs are seeking.

civil disorder). And for the reasons set forth herein, the temporary curfew that the City defendants adopted in June 2020 during a time of great unrest and uncertainty is likewise valid.

Here, plaintiffs do not challenge the City defendants' authority to declare an emergency or impose a curfew. Nor could they. See N.Y. Executive Law ("Exec. Law") § 24(1) (authorizing the New York City mayor to declare an emergency and adopt emergency measures, including the "establishment of a curfew"); N.Y.C. Administrative Code ("Admin. Code") § 3-104 *et seq*. (authorizing the same). Plaintiffs also do not purport to dispute the existence of an emergency and thus the need for emergency measures.[3] Indeed, the Floyd protests that began in New York City on May 28, 2020, were initially peaceful, but as plaintiffs acknowledge, they were punctuated at night by "severe instances of criminal behavior," including looting, property destruction, and violence, in neighborhoods throughout the City. See Compl. ¶ 13, 14, 16, 46. Specifically, as detailed in the media coverage specifically referenced by plaintiffs in their Complaint, the criminal activity involved objects being thrown at police officers, police vehicles being set on fire, shop windows being smashed, businesses looted, and roads blocked with debris. See Jim Mustian, *Chaos and Destruction as New York City Protest Turns Violent*, ASSOCIATED PRESS (May 30, 2020), available at https://apnews.com/article/a786e36787da75082b3f9893b2129a0e (last accessed Dec. 10, 2020); *George Floyd Protests Swarm Manhattan, Brooklyn; Over 100 Arrested Amid Violence*, ABC7 (May 30, 2020), available at https://abc7news.com/george-floyd-protest-protests-nyc/6221677/

---

[3] The Complaint is silent with respect to the declaration of an emergency, referencing "emergency" only when noting that "emergency medical technicians," among others, are exempt from the curfew. See Compl. at fn. 4. Rather, as discussed below, plaintiffs' challenge is directed at the geographic scope and duration of the curfew. See Compl. ¶ 68, 60; see also id. at p. 8 (stating that "there was Absolutely No Justification to Confine Millions of Individuals to House Arrest for Nine Hours a Day").

(last accessed Dec. 10, 2020); *N.Y.C. Protests Turn Violent*, NY TIMES (May 31, 2020), available at https://www.nytimes.com/2020/05/31/nyregion/nyc-protests-george-floyd.html#link-4200ecb4 (last accessed Dec. 10, 2020); Brian Mahoney, *N.Y.C. Left Reeling After Days of Unrest, Violence Amid George Floyd Protests*, Associated Press (May 31, 2020), available at https://globalnews.ca/news/7008592/george-floyd-protests-new-york/ (last accessed Dec. 10, 2020); Ali Watkins, *Shattered Glass in SoHo as Looters Ransack Lower Manhattan*, NY TIMES (June 1, 2020), available at https://www.nytimes.com/2020/06/01/nyregion/nyc-looting-protests.html (last accessed Dec. 10, 2020).[4] On May 31, 2020, after three nights of such activity, Governor Andrew Cuomo placed National Guard troops "on standby," and business leaders later urged their deployment. See Aaron Feis, *Gov. Cuomo says National Guard 'on standby' as George Floyd protests rage on*, NY POST (March 31, 2020), available at https://nypost.com/2020/05/31/george-floyd-protests-gov-cuomo-says-national-guard-is-on-standby/ (last accessed Dec. 10, 2020); Jorge Fitz-Gibbon, *NYC Business Owners Urge Gov. Cuomo to Deploy National Guard Amid Looting*, NY POST (June 2, 2020), available at https://nypost.com/2020/06/02/nyc-businesses-want-national-guard-to-stop-looting/ (last accessed Dec. 10, 2020). Finally, on June 1, 2020, five days after the Floyd protests began, Mayor de Blasio and Governor Cuomo announced a citywide curfew from 11 p.m. to 5 a.m. for one night to curb the violence and looting. See Compl. ¶ 17; Murray Dec., Ex. B. In conjunction with the announcement, Mayor de Blasio issued an Emergency Order declaring an emergency

---

[4] It is proper for this Court to take notice of the media coverage of the criminal activity occurring during the Floyd protests. See 421-A Tenants Ass'n v. 125 Court St. LLC, 760 Fed. Appx. 44, 49 (2d Cir. 2019) (noting that "it is appropriate to take news articles into account even on a Rule 12(b)(6) motion"); see also Compl. ¶¶ 15, 30 (referencing media coverage and commentary).

and enacting the curfew.[5] See Murray Dec., Ex. C. Yet the criminal activity continued during the first night of the curfew, including in the hours before the curfew went into effect. See *NYC Protests Flare Looting Starts as 11 p.m. Curfew Approaches*, PIX11 (June 1, 2020), available at https://www.pix11.com/news/local-news/nyc-protests-flare-looting-starts-as-11-p-m-curfew-approaches (last accessed Dec. 10, 2020); *Reports: Several Businesses Vandalized, Looted in Advance of New York City's Curfew*, CBSNEWYORK (June 1, 2020), available at https://newyork.cbslocal.com/2020/06/01/george-floyd-protests-looting-vandalism-union-square-manhattan/ (last accessed Dec. 10, 2020); *Looting and Violence Continues in New York City Despite Unprecedented Curfew*, THE GUARDIAN (June 2, 2020), available at https://www.theguardian.com/us-news/2020/jun/02/new-york-city-looting-despite-curfew (last accessed Dec. 10, 2020). Thus, on June 2, 2020, Mayor de Blasio issued a second Emergency Order extending the curfew through June 8, 2020, and expanding the curfew to cover the hours of 8 p.m. to 5 a.m. See Murray Dec., Ex. D.

In addition to not disputing the existence of an emergency or the need for emergency measures, plaintiffs do not seriously allege that the City defendants enacted the curfew for any reason other than to maintain civil order during an emergency. Plaintiffs attempt to contort Mayor de Blasio's statements to suggest that the curfew may have been employed as a general crime reduction tool akin to the police practice of "Stop and Frisk," see Compl. ¶ 41, but it is clear from the facts and circumstances that this was not case. The curfew was a short-lived measure employed only during a state of emergency, the declaration of which plaintiffs do not dispute. Moreover, the context of Mayor de Blasio's statement about the curfew being a "tool" to

---

[5] Because of the declaration of emergency in this case, plaintiffs' reference to Bykofsky v. Borough of Middletown, 429 U.S. 964 (1976), which addresses the constitutionality of a "nonemergency curfew for juveniles," is of no moment. See Compl. ¶ 25.

"magnify [the City defendants'] ability to control the situation" make clear that the curfew was adopted specifically to address the severe instances of criminal behavior that flared up over the course of a mere few days amidst heated protesting. See Compl. ¶¶ 39, 49; see also Murray Dec., Ex F at 23; [6] Geller v. Cuomo, 2020 WL 4463207, *23-24 (S.D.N.Y. Aug. 3, 2020) ("It was because of [property destruction and looting] that a curfew was imposed."). It should also be noted that the City defendants enacted a curfew only after days of escalating criminal activity and that, even after rescission of the curfew and abatement of the serious criminal activity, regular protests continued throughout New York City for months.  See id. at *23.

Plaintiffs' challenge to the enactment of the curfew is instead directed at its scope. Plaintiffs note that the curfew "began at a time when it was still daylight out" and thus opine that the curfew could have begun around midnight when much of criminal activity was reported to have occurred. See Compl. ¶ 27, 46. Plaintiffs also claim that the "blanket confinement" of a "city of millions" was unjustified by the criminal acts of "some persons" and suggest that the curfew could have been limited to vaguely-defined "retail areas" of the City. See id. ¶ 31, 46. In essence, plaintiffs are asking the Court to substitute its judgment for that of the City defendants in terms of how the curfew should have been crafted with respect to scope and duration. Plaintiffs' request to subject the curfew to second-guessing in this manner is improper. See Chalk, 441 F.2d at 1281 ("We think it would be highly inappropriate for us, removed from the

---

[6] The cited exhibit is a transcript of a June 2, 2020 press conference by Mayor de Blasio and Police Commissioner Dermot Shea. Plaintiffs cite statements from the press conference in the Complaint. See Compl. ¶ 39. The transcript is also publicly available at https://www1.nyc.gov/office-of-the-mayor/news/397-20/transcript-mayor-de-blasio-holds-media-availability (last accessed Dec. 10, 2020). During the press conference, Mayor de Blasio stated: "We will take steps immediately to ensure that that there will be peace and order today and tonight . . . .  We're going to continue the curfew for the remainder of this week . . . .  We're going to ensure there are additional NYPD resources where they are needed.  We're going to work actively and strategically to stop any disorder."  See Murray Dec., Ex. F at 4.

primary responsibility for maintaining order and with the benefit of time for reflection not available to the mayor, to substitute our judgment of necessity for his.") cert. denied 404 U.S. 943 (1971); Glover, 250 A.2d at 560 (declining to "consider the availability of other governmental responses which could end disorder yet place fewer restrictions on travel, free speech, and assembly"); Smith v. Avino, 866 F. Supp. 1399, 1404 (S.D. Fla. 1994) (declining to "pick and choose which elements of the Curfew were, and were not, justified by the emergency circumstances") aff'd 91 F.3d 105 (11th Cir. 1996); Luke's Catering Serv., LLC v. Cuomo, 2020 WL 5425008, *40 (W.D.N.Y. Sept. 10, 2020) ("This Court would usurp the State's police power and the function of another branch of government if it were to engage in Monday-morning-quarterbacking or substitute its judgment for that of the State's.").

In any event, there is a factual basis that the specific restrictions set forth in the challenged Emergency Orders were necessary to maintain order. First, there is a factual basis for imposing a *citywide* curfew. Although plaintiffs' allege that the "severe instances of criminal behavior" occurred only in certain parts of the City, see Compl. ¶¶ 15-16, the events did not unfold in real time in such a way that the geographic scope of this activity could be so easily defined and cabined. Rather the criminal activity spread to different neighborhoods, often unpredictably, from one night to the next. See Murray Dec., Ex. F at 8 (NYPD Commissioner's June 2, 2020 statements discussing the location of the criminal activity and deployment of police personnel over two nights);[7] see also David Cruz and Sophia Chang, *In The Bronx, Small Business Owners Reel From Night of Looting and Vandalism*, Gothamist (June 2, 2020), available at https://gothamist.com/news/bronx-small-business-owners-reel-night-looting-and-

---

[7] As noted above, the Police Commissioner's June 2, 2020 statements are incorporated into the Complaint by reference, as plaintiffs cite statements from the June 2, 2020 media availability in which both Mayor de Blasio and the Police Commissioner participated. See Compl. ¶ 39.

vandalism (last accessed Dec. 10, 2020) (Bronx Borough President Ruben Diaz Jr. discussing the criminal activity in the Bronx: "[N]o one saw this coming. . . . [T]his happened all of a sudden"). Thus, in the absence of a citywide curfew to "control the situation" and limit more widespread looting and property damage, see Compl. ¶ 39, the City defendants could have been left responding with ever-expanding emergency measures to areas of the City where the damage was already done. There is nothing in the applicable statutes or constitutional law that requires emergency measures to be employed in this manner. Even assuming the City defendants could have predicted where the serious criminal activity would occur and thus restricted the curfew to those areas only, see Compl. ¶ 46, it is pure speculation to assume that violence would not spill over into other neighborhoods not subject to the curfew. Indeed, courts do not have the "means of measuring precisely the impact of any one emergency restriction on the level of or potential for violence." See Chalk, 441 F.2d at 1282. Moreover, restricting the curfew to areas where the "serious incidents were occurring," as plaintiffs suggest, could potentially open the City defendants to other claims. See, e.g., Hutchins v. District of Columbia, 188 F.3d 531, 433 (D.C. Cir. 1999) (rejecting plaintiffs' claim that a curfew should have been confined to "high-crime areas of the city," as it would have "opened the Council to charges of racial discrimination").

Second, there is a factual basis for the specific hours of the citywide curfew. Because the criminal activity occurred late at night, see Compl. ¶ 46, the City defendants began the curfew on the first night at 11 p.m. See Murray Dec., Ex. C. But the hour proved ineffective because, as noted above, violence and looting occurred on the night of June 1, 2020 in advance of the 11 p.m. curfew going into effect. See, e.g., *NYC Protests Flare Looting Starts as 11 p.m. Curfew Approaches*, PIX11 (June 1, 2020), available at https://www.pix11.com/news/local-news/nyc-protests-flare-looting-starts-as-11-p-m-curfew-approaches (last accessed Dec. 10,

2020); *Reports: Several Businesses Vandalized, Looted in Advance of New York City's Curfew*, CBSNEWYORK (June 1, 2020), available at https://newyork.cbslocal.com/2020/06/01/george-floyd-protests-looting-vandalism-union-square-manhattan/ (last accessed Dec. 10, 2020);Thus, the City defendants expanded the curfew to begin each day at 8 p.m. to "magnify [the City's] ability to control the situation" and curb more looting and property damage. See Compl. ¶ 38; see also Murray Dec., Ex. F at 12. Under these circumstances, the City defendants reasonably exercised its broad discretion, and there is no basis for the Court to conclude as a matter of law, as plaintiffs urge, that a "less prohibitive time frame" would have been justified. See Compl. ¶ 46; see also Chandler, 458 F. Supp. at 461 (declining to substitute the court's judgment for that of the mayor's in regard to the specific hours of the curfew).

Plaintiffs appear to take issue with the fact that curfew was in effect "for an entire week," suggesting that the duration was unjustified because "the need for some quantum of stress relief outdoors – if even for a moment – was at its greatest due to the COVID-19 pandemic."[8] See Compl. ¶¶ 63-64. The type of review that plaintiffs are asking this Court to undertake in assessing the validity of the Emergency Orders – balancing significant public health concerns due to a deadly pandemic and significant public safety concerns due to "severe" instances of violence, property destruction, and looting – is entirely inappropriate and would amount to a substantial usurpation of the City defendants' essential function to promote the "security and well-being of its people." Sterling, 287 U.S. at 398. In any event, plaintiffs' allegations with respect to the pandemic do not undermine the factual basis that supports the Emergency Orders but rather emphasize the gravity of the situation. See, e.g., Murray Dec., Ex. F at 3-4 (Mayor de Blasio stated: "We have a lot to do on ensuring there will be peace and order

---

[8] To be clear, the curfew at issue here was in effect for six nights.

14

in this city, but guess what, the pandemic is still there. And we must address that and we need to reopen this city."). Moreover, as courts have noted in similar circumstances, plaintiffs are "free to exercise [their First Amendment] rights during other hours of the day and [] the curfew is a temporary emergency measure that will not remain in effect for an unjustifiably extended period." Moorhead, 723 F. Supp. at 1114 (noting that conditions "still justif[ied] the nocturnal curfew" six days after enactment).[9]

        Plaintiffs' apparent attempts to minimize the extent and nature of the criminal activity during the Floyd protests and thus the need for the Emergency Orders are unavailing. The exigency for the curfew is not undercut by plaintiffs' allegation that the Floyd protests were predominantly peaceful. See, e.g., Menotti v. City of Seattle, 409 F.3d 1113, 1134 (9th Cir. 2005) ("In the context of a massive demonstration with tens of thousands of participants, once a pattern of chaotic violence had been established, it was unrealistic to expect police to be able to distinguish, minute by minute, those protestors with benign intentions and those with violent intentions."). Moreover, plaintiffs' reference to City crime statistics from pre-COVID-19 times is irrelevant, as plaintiffs acknowledge that the City came to a near standstill under the "prohibitive environment which existed for months following the emergence of COVID-19." See Compl. ¶¶ 32-34, 48. Finally, plaintiffs' suggestion that the scope of the Emergency Orders can only be justified by the presence of National Guard troops is baseless. See id. ¶ 21. That there were calls by some for such a drastic measure as placing troops on New York City streets undoubtedly factored into the calculus in enacting the Emergency Orders and thus clearly demonstrates why City defendants, who must consider a range of options with broad consequences, should be

---

[9] It should be noted that the Emergency Orders, like other temporary emergency curfews that have been upheld, imposed content-neutral, time, place, and manner restrictions that (for all the reasons set forth herein) were reasonably and narrowly tailored to maintain public order and peace. See, e.g., Chalk, 441 F.2d at 1280-1281; Moorhead, 723 F. Supp. at 1113.

afforded comparably broad discretion in this matter. See Jorge Fitz-Gibbon, *NYC Business Owners Urge Gov. Cuomo to Deploy National Guard Amid Looting*, NY POST (June 2, 2020), available at https://nypost.com/2020/06/02/nyc-businesses-want-national-guard-to-stop-looting/ (last accessed Dec. 10, 2020); Murray Dec., Ex. F at 8-9 (Mayor de Blasio stating that it is "not wise" for the National Guard forces to be in New York City and noting that a National Guard member "called up from any part of this state doesn't have that particular training [for conditions in New York City], doesn't know our environment, but is carrying a loaded weapon").

Plaintiffs allege that the safety goals of the Emergency Orders could have been achieved by establishing a civil penalty for the curfew violations, instead of a criminal penalty. See Compl. ¶¶ 43-46. While it is entirely discretionary whether a government decides to establish civil or criminal penalties (or both) for such violations, there is nothing unconstitutional about the determination to establish a criminal penalty. City defendants acted in strict accordance with state and local law and the U.S. Constitution. See Exec. Law § 24(5); Admin. Code § 3-108; Chalk, 441 F.2d at 1280 (stating that when emergency powers are invoked, "[a]ctions which citizens are normally free to engage in become subject to criminal penalty"). Additionally, the Emergency Orders provide for "orders to disperse" where there is a failure to comply with the curfew and thus demonstrate that City defendants were not unthinkingly slapping criminal liability on millions. See Compl. ¶ 45.

Given the above, it is clear that the City defendants properly exercised their broad discretion in an emergency situation and enacted Emergency Orders on the basis that they were necessary to maintain order. And indeed within days of enactment, civil order followed and the curfew was lifted – on June 7, 2020, one day earlier than provided for in Emergency Order No. 122. See Compl. at fn 1; Murray Dec., Ex. E. That the City defendants ended the curfew one day

early, purportedly "under mounting pressure from politicians and civil rights organizations," gives support to the notion that the use of emergency curfews are predominantly matters of political debate, not questions for judicial resolution. See Chalk, 441 F.2d at 1282. In any event, the public record establishes that contrary to plaintiffs' conjecture, the curfew was lifted a day early because the emergency situation ended.  For all these reasons, the City defendants acted in accordance with applicable law in adopting the citywide curfew and thus plaintiffs' First, Fourth, and Fourteenth Amendments claims as against the City defendants with respect to the facial validity of the Emergency Orders should be dismissed.

## POINT II

### AS THE EMERGENCY CURFEW WAS LEGAL, THE NAMED PLAINTIFFS' ARRESTS WERE VALID AND THEIR FALSE ARREST CLAIMS SHOULD BE DISMISSED.

In the Complaint, each of the plaintiffs admits to being out past 8 p.m. in violation of the Emergency Orders.  Given these admissions, there was probable cause for these arrests and their false arrest claims fail. As the curfew was valid, the arrests of the individual plaintiffs made pursuant to violations of that curfew are Constitutional.[10]

Under New York law, the elements of a false arrest claim are: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged.  Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995) (internal quotations and citations omitted).  However, "[t]he existence of probable cause to arrest constitutes

---

[10] Assuming *arguendo* that the Court finds the curfew was not Constitutional, the arrests may still have been valid under Devenpeck v. Alford, 543 U.S. 146, 125 S. Ct. 588 (2004), as additional facts may come to light during discovery, should these claims proceed.  In addition, qualified immunity may apply.

justification and 'is a complete defense to an action for false arrest . . . .'" Weyant v. Okst, 101

F.3d 845, 852 (2d Cir. 1996) (quoting Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994)).

As discussed *supra*, Executive Order Nos. 118 and 119 established a citywide

curfew between the hours of 8 p.m. and 5 a.m. from June 2 through June 8, 2020. See Murray

Decl., Ex. C and D. Pursuant to these Orders, "no persons or vehicles may be in public" during

the above hours, and "any person who knowingly violates the provisions in this Order is guilty of

a Class B misdemeanor." Id. Each of the named plaintiffs admits in the complaint that they were

in violation of this curfew at the time of their arrests. Plaintiff Jeffrey was attending a barbeque

at 10 p.m. on June 4 in a building where he did not reside. See Compl. ¶¶ 99-101. Plaintiff Blake

was standing in front of the building where he resided at 8:39 p.m. on June 5. Id. ¶¶ 105-106.

Finally, plaintiff Pena was driving around his neighborhood, allegedly to find a parking space, at

10 p.m. on June 5. Id. ¶¶ 112-113. Each of these actions was prohibited by the curfew, and none

of the plaintiffs or their actions fall into the essential worker exceptions to the curfew.[11]

Therefore, there was probable cause to arrest each of the plaintiffs for violating the curfew.

Moreover, plaintiffs' violations of Executive Order Nos. 118 and 119 were Class

B misdemeanors. See Murray Decl., Ex. C and D. Under the New York State Penal Law, a Class

B misdemeanor is punishable by a "sentence of imprisonment" which "shall not exceed three

months." See N.Y. P.L. § 70.15(2). Once there was probable cause to believe the plaintiffs were

violating the curfew, officers were permitted to make a custodial arrest. "If an officer has

probable cause to believe that an individual has committed even a very minor criminal offense in

his presence, he may, without violating the Fourth Amendment, arrest the offender." Atwater v.

City of Lago Vista, 532 U.S. 318, 354 (2001); see also Virginia v. Moore, 553 U.S. 164, 176

---

[11] See Murray Decl., Ex C at Section 3; Ex D at Section 2.

(2008).  Therefore, the arrests of the plaintiffs were valid, and their false arrest claims should be dismissed with prejudice.[12]

**POINT III**

**THE COURT SHOULD DISMISS THE COMPLAINT IN ITS ENTIRETY AS AGAINST MAYOR DE BLASIO IN HIS INDIVIDUAL CAPACITY.**

The Court should dismiss the Complaint as against Mayor de Blasio in his individual capacity because Mayor de Blasio is entitled to qualified immunity with respect to enactment of the Emergency Orders and because the Complaint fails to allege that Mayor de Blasio acted or failed to act in any way that would subject him to personal liability for the enforcement of the Emergency Orders.

**A.**    **Defendant de Blasio, in his individual capacity, is entitled to qualified immunity for enacting the Emergency Orders.**

As set forth in Point I, *supra*, because enactment of the Emergency Orders was lawful, plaintiffs' claims regarding the facial validity must be dismissed. However, assuming *arguendo* that the Emergency Orders, on their face, amount to a constitutional violation, Mayor de Blasio is nevertheless entitled to qualified immunity. Qualified immunity shields government officials from liability for damages on account of their performance of discretionary official functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800,

---

[12] Because there was probable cause for the arrests, plaintiffs' First Amendment claim in its entirety must be dismissed.  See Nieves v. Bartlett, 139 S. Ct. 1715, 1724 (2019). Moreover, at the time of arrest, plaintiffs were not engaged in expressive activity.  See Salmon v. Blesser, 802 F.3d 249, 256 (2d Cir. 2015) ("[T]he First Amendment protects conduct only if it has an expressive purpose.").

818 (1982). Qualified immunity is established if, at the time defendants acted, it was not clear whether federal law protected plaintiffs' claimed interests, or the defendants reasonably believed that their actions did not contravene an established federal right. See Ying Jing Gan v. City of New York, 996 F.2d 522, 531-32 (2d Cir. 1993). The contours of the constitutional right allegedly violated must be defined with particularity rather than in broad, generalized or abstract terms. A Court will only find that qualified immunity is inapplicable where it is clear that at the time of the alleged constitutional violation, a reasonable person would have known that the action would violate a federal right.  See Molinelli v. Tucker, 901 F.2d 13, 14 (2d Cir. 1990) (holding qualified immunity protects officials when it is not unambiguous that their actions violated federal right.). Given the broad discretion afforded to Mayor de Blasio to protect public health and safety in times of emergency and the case law consistently affirming the use of temporary emergency curfews, the Court should dismiss the claims relating to the enactment of the Emergency Orders against Mayor de Blasio in his individual capacity as it was objectively reasonable for him to believe that he was not violating established federally protected rights.

**B.      Plaintiffs fail to allege that Defendant de Blasio acted or failed to act in any way that would subject him to personal liability for the enforcement the Emergency Orders.**

The Court should also dismiss all claims against Mayor de Blasio in his individual capacity regarding enforcement of the Emergency Orders because plaintiffs fail specifically to allege Mayor de Blasio's personal involvement in a purportedly unconstitutional enforcement policy. To state a claim under 42 U.S.C. § 1983, plaintiffs must show (1) that the conduct in question deprived them of a right, privilege, or immunity secured by the Constitution or the laws of the United States, and (2) that the acts were attributable in part to a person acting under color of state law.  See Dwares v. City of New York, 985 F.2d 94, 98 (2d Cir. 1993).  The

20

"personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006).

Here, aside from describing a purportedly unconstitutional enforcement policy, plaintiffs merely allege that Mayor de Blasio "was a 'policymaker' who made and enforced the policies of the NYPD and the Curfew Orders," see Compl. ¶ 82, and that the acts complained of were carried out "under the supervision" of Mayor de Blasio, among others, see Compl. ¶ 170. Such conclusory and non-specific allegations are insufficient to show that Mayor de Blasio was personally involved in the enforcement of the Emergency Orders – and certainly not against "predominantly low income, minority neighborhoods and/or in a manner that predominantly and disparately impacted individuals based on racial classifications." See Compl. ¶ 4. Plaintiffs' claims against Mayor de Blasio appear to be premised solely on the fact that he is the mayor, but an "individual cannot be held liable for damages under § 1983 'merely because he [holds] a high position of authority.'" Back v. Hastings on Hudson Union Free School District, 365 F.3d 107, 127 (2d Cir. 2004) (quoting Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996)).

Accordingly, the Court should dismiss the Complaint in its entirety as against Mayor de Blasio in his individual capacity.

## **CONCLUSION**

For the reasons set forth above, the Court should grant the City defendants'
motion to dismiss.

Dated:        New York, New York
              December 10, 2020

                                        Respectfully submitted,

                                        GEORGIA M. PESTANA
                                        Acting Corporation Counsel of the City of
                                        New York
                                        Attorney for City Defendants
                                        100 Church Street
                                        New York, New York 10007
                                        (212) 356-4036


                          By:  _____/s/_____
                                        EDWARD L. MURRAY
                                        ERIN T. RYAN
                                        Assistant Corporation Counsels

22