UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X

LAMEL JEFFERY, THADDEUS BLAKE, CHAYSE
PENA, on Behalf of Themselves and Others Similarly
Situated,

                Plaintiffs,

          -against-                             20 CV 02843 (NGG)(RML)

THE CITY OF NEW YORK, BILL DE BLASIO,
Mayor of New York City, Individually and in his
Official Capacity, ANDREW CUOMO, Governor of the
State of New York, Individually and in his Official
Capacity, and P.O.s JOHN DOE #1-50, Individually and
in their Official Capacity, (the name John Doe being
fictitious, as the true names are presently unknown),

Service Date:
March 17, 2021

                Defendants.

------------------------------------------------------------------- x

**CITY DEFENDANTS' REPLY MEMORANDUM OF LAW IN
FURTHER SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

GEORGIA M. PESTANA
Acting Corporation Counsel of the City of New York
Attorney for City Defendants
100 Church Street
New York, New York 10007
(212) 356-4036

March 17, 2021

MICHELLE GOLDBERG-CAHN,
EDWARD L. MURRAY,
ERIN T. RYAN,
Of Counsel

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT

    I.    THE COURT SHOULD DISMISS ALL FACIAL CLAIMS RELATING TO THE VALIDITY OF THE CURFEW .................................................................................................. 1

        A.    Temporary emergency curfews are not subject to "exacting strict scrutiny." .......................................................... 1

        B.    The City enacted the curfew in good faith and was fully justified in doing so. ............................................... 4

        C.    Plaintiffs fail to state a Fourth Amendment claim ................ 8

    II.    THE NAMED PLAINTIFFS' ARRESTS WERE VALID AND SO THEIR FALSE ARREST CLAIMS SHOULD BE DISMISSED .............................................................................. 9

    III.    THE COURT SHOULD DISMISS THE COMPLAINT IN ITS ENTIRETY AS AGAINST DEFENDANT DE BLASIO IN HIS INDIVIIDUAL CAPACITY .............................................................................................. 10

CONCLUSION ................................................................................................................... 11

## TABLE OF AUTHORITIES

**Cases** **Pages**

7020 Entm't, LLC v. Miami-Dade Cty.,
    2021 WL 516282 (S.D. Fl., Feb. 11, 2021) ...................................................................2

Agudath Isr. v. Cuomo,
    983 F.3d 620 (2d Cir. 2020) ..........................................................................................6

Baxter v. Palmigiano,
    425 U.S. 308 (1976) ................................................................................................. 9-10

Bayley's Campground, Inc. v. Mills,
    985 F.3d 153 (1st Cir. 2021) .........................................................................................6

Binson v. J.E. Robert Co.,
    No. 03-CV-3562, 2006 U.S. Dist. LEXIS 101012 (E.D.N.Y. June 27, 2006) ..........10

Bykofsky v. Middletown,
    429 U.S. 964 (1976) .....................................................................................................2

Calvary Chapel Dayton Valley v. Sisolak,
    140 S. Ct. 2603 (2020) .................................................................................................6

Catanzaro v. Weiden,
    188 F.3d 56 (2d Cir. 1999) ...........................................................................................7

Cole v. City of Memphis,
    97 F. Supp. 3d 947 (W.D. Tenn., Jan. 15, 2015) .........................................................2

DiBlasio v. Novello,
    413 Fed. Appx. 352 (2d Cir. 2011) ..............................................................................7

Doe v. Bolton,
    410 U.S. 179 (1973) .....................................................................................................8

Embry v. City of Cloverport,
    2004 WL 191613 (W.D. Ky., Jan. 22, 2004) ...............................................................2

Geller v. Cuomo,
    476 F.Supp.3d 1 (S.D.N.Y. 2020) ................................................................................6

Glover v. District of Columbia,
    250 A.2d 556 (D.C. Cir. 1968) ....................................................................................6

Harrell v. City of New York,
    138 F. Supp. 3d 479 (S.D.N.Y. 2015) .........................................................................8

**Cases**                                                                                                    **Pages**

Harris v. Mills,
    572 F.3d 66 (2d Cir. 2009)..................................................................................8

Holmes v. Air Line Pilots Ass'n,
    745 F. Supp. 2d 176 (E.D.N.Y. 2010) ..................................................................5

Hopkins Hawley LLC v. Cuomo,
    2021 WL 465437 (S.D.N.Y. Feb. 9, 2021)...........................................................3

Hunter v. Bryant,
    502 U.S. 224 (1991)..............................................................................................9

Kachalsky v. Cty. of Westchester,
    701 F.3d 81 (2d Cir. 2011)....................................................................................4

King v. New Rochelle Mun. Hous. Auth.,
    442 F.2d 646 (2d Cir. 1971)..................................................................................3

Kowalski v. Tesmer,
    543 U.S. 125 (2004)............................................................................................10

L-7 Designs, Inc. v. Old Navy, LLC,
    647 F.3d 419 (2d Cir. 2011)..................................................................................8

Estate of M.D. v. New York,
    241 F. Supp. 3d (S.D.N.Y. 2017) .........................................................................8

Moorhead v. Farrelly,
    723 F. Supp. 1109 (D.V.I. 1989) ......................................................................5, 6

Our Wicked Lady LLC v. Cuomo,
    2021 WL 915033 (S.D.N.Y. Mar. 9, 2021) ..........................................................3

Pearson v. Callahan,
    555 U.S. 223 (2009)..............................................................................................9

Plaza Motors of Brooklyn, Inc. v. Cuomo,
    2021 WL 222121 (E.D.N.Y. Jan. 22, 2021) .........................................................3

Ramos v. Town of Vernon,
    353 F.3d 171 (2d Cir. 2003)..................................................................................3

Roman Catholic Diocese v. Cuomo,
    141 S. Ct. 63 (2020)....................................................................................2, 3, 6

**Cases** **Pages**

Schall v. Martin,
 467 U.S. 253 (1984)..................................................................................................4

Scheuer v. Rhodes,
 416 U.S. 232 (1972)..................................................................................................7

Smith v. Avino,
 91 F.3d 105 (11th Cir. 1996) ....................................................................................2

Soldal v. Cook Cty., Ill.,
 506 U.S. 56 (1992)....................................................................................................8

Town of Southold v. Town of E. Hampton,
 477 F.3d 38 (2d Cir. 2006).......................................................................................3

U.S. v. Jacobson,
 466 U.S. 109 (1983)..................................................................................................3

United States v. Chalk,
 441 F.2d 1277 (4th Cir. 1971) ............................................................................ 2, 6-7

Wallace v. Kato,
 549 U.S. 384 (2007)..................................................................................................8

Williams v. Town of Greenburgh,
 535 F.3d 71 (2d Cir. 2008).......................................................................................3

**Statutes**

Fed. R. Civ. P. 12(b)(6)........................................................................................................1

Fed. R. Civ. P. 23(c)(1).......................................................................................................9

Defendants, the City of New York and Bill de Blasio, Mayor of the City of New York, individually and in his official capacity (collectively, "City"), submit this reply memorandum in further support of its motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiffs argue in their Memorandum of Law in Opposition to Defendants' Motions to Dismiss, dated February 10, 2021 ("Opp."), that this Court should apply "exacting strict scrutiny" to a temporary curfew that the City enacted nine months ago to address civil unrest in the middle of large demonstrations in the middle of a deadly pandemic that placed New York City at its epicenter. Plaintiffs also argue that the curfew cannot withstand judicial review without discovery. Plaintiffs' arguments are as implausible as their allegations that the City committed gross constitutional violations by gradually implementing the temporary curfew only after days of escalating unrest and ultimately ending the curfew early when the circumstances changed. Accordingly, and as set out more fully in the City's moving papers and herein, the Court should dismiss all claims relating to the facial validity of the curfew. Plaintiffs also fail to refute the City's arguments for dismissal of the false arrest claims and claims against Mayor de Blasio in his individual capacity, and so the Court should grant the instant motion in its entirety.[1]

## ARGUMENT

**I.   THE COURT SHOULD DISMISS ALL FACIAL CLAIMS RELATING TO THE VALIDITY OF THE CURFEW.**

    **A.   Temporary emergency curfews are not subject to "exacting strict scrutiny."**

As argued in the City's moving papers, this Court should dismiss Plaintiffs' First, Fourth, and Fourteenth Amendment claims relating to the facial validity of the curfew on the

---

[1] The City's motion does not address Plaintiffs' claims relating to enforcement of the curfew.

basis that the City's actions were taken in good faith and that there is a factual basis for the decision that the curfew was necessary to maintain order. See, e.g., Smith v. Avino, 91 F.3d 105 (11th Cir. 1996); United States v. Chalk, 441 F.2d 1277 (4th Cir. 1971). Plaintiffs, however, argue that defendants derive this purportedly improper standard of review from "errant, outer circuit decisions." Opp. at 11, 13. Yet Plaintiffs fail to cite one case that invalidates a temporary emergency curfew under their preferred standard of review, namely, "exacting strict scrutiny." See Opp. at 9. In fact, where emergency curfews are referenced in the case law Plaintiffs cite, it supports the continuing validity of Smith and Chalk. See Bykofsky v. Middletown, 429 U.S. 964, 965 (1976) ("I have little doubt but that, absent a genuine emergency, see, e.g., United States v. Chalk, 441 F. 2d 1277 (CA4 1971), a curfew aimed at all citizens could not survive constitutional scrutiny."); Embry v. City of Cloverport, 2004 WL 191613, *12 (W.D. Ky., Jan. 22, 2004) ("Typically, courts have allowed broad curfews only in cases of an immediate threat to public safety . . . and even then, only on a temporary basis.") (citing Chalk); Cole v. City of Memphis, 97 F. Supp. 3d 947, 961 (W.D. Tenn., Jan. 15, 2015). Also as recently as February 2021, a district court upheld a *months-long* curfew under Smith. See 7020 Entm't, LLC v. Miami-Dade Cty., 2021 WL 516282, *26 (S.D. Fl., Feb. 11, 2021) (noting that the court need not reach the substance of the First Amendment claims because the curfew was valid under Smith). Although Chalk includes language suggestive of intermediate scrutiny, as Plaintiffs note, the decision does not apply it to the facts of that case, thus undercutting Plaintiffs' argument about applying the "typical constitutional standards" of scrutiny to this case. See Opp. at 14.

Contrary to Plaintiffs' claim, the Supreme Court decision in Roman Catholic Diocese v. Cuomo, 141 S. Ct. 63 (2020), does not dictate the standard of review here. Rather, it suggests that with Free Exercise claims (which are not raised here), courts should not apply the

deference afforded to governments in public health emergencies set forth in U.S. v. Jacobson, 466 U.S. 109 (1983), and instead apply the usual tiers of constitutional analysis. See, e.g., Hopkins Hawley LLC v. Cuomo, 2021 WL 465437, *11 (S.D.N.Y. Feb. 9, 2021) (applying Jacobson); Our Wicked Lady LLC v. Cuomo, 2021 WL 915033, *8 (S.D.N.Y. Mar. 9, 2021) (applying Jacobson); but see Plaza Motors of Brooklyn, Inc. v. Cuomo, 2021 WL 222121, *12 (E.D.N.Y. Jan. 22, 2021). Roman Catholic Diocese also involved claims of discrimination against religious institutions, not a measure, like the curfew, that applied uniformly to a population. 141 S. Ct. at 66 (noting religious institutions "single[d] out" for "harsh treatment").

Plaintiffs also mistakenly argue that Ramos v. Town of Vernon, 353 F.3d 171 (2d Cir. 2003) requires that the curfew be subject to strict scrutiny. In analyzing an equal protection challenge to a non-temporary, non-emergency juvenile curfew, the Second Circuit in Ramos stated that if the *same* curfew were applied to adults, the measure would be subject to strict scrutiny. 353 F.3d at 176. Here, however, the curfew applies equally to the entire population, and there no are claims it facially violates equal protection, a context in which, as relevant here, the right to travel "achieves its most forceful expression." Town of Southold v. Town of E. Hampton, 477 F.3d 38, 53 (2d Cir. 2006); see also King v. New Rochelle Mun. Hous. Auth., 442 F.2d 646 (2d Cir. 1971) (equal protection challenge to residency requirements).[2]

For the above reasons, it is proper for the Court to dismiss all claims relating to the validity of the curfew on the basis the City's actions were taken in good faith and that there is some factual basis for the decision that the curfew was necessary to maintain order.

---

[2] Although Plaintiffs appear to argue otherwise, "the parameters of [the] right [to travel] have not been sharply defined." Williams v. Town of Greenburgh, 535 F.3d 71, 75 (2d Cir. 2008).

### B. The City enacted the curfew in good faith and was fully justified in doing so.

Plaintiffs' opposition brief fails to refute the City's argument in favor of dismissal of Plaintiffs' First, Fourth, and Fourteen Amendment claims. Plaintiffs' claims hang on a tabloid headline: "The City Imprisoned Eight Million People in Their Homes for One Week." See Complaint ("Compl.") at p. 14. But below the headline are allegations that the City was in the middle of uniquely tense situation (namely, escalating civil unrest in the middle of large demonstrations in the middle of a deadly pandemic); that it initially attempted to control the unrest with a six-hour curfew;[3] that it expanded the scope of the curfew only after more modest measures;[4] and that it ended the curfew one day early.[5] See Compl. There are no allegations that the City imposed the curfew in bad faith or that it was enacted for reasons unrelated to protecting the public from harm to their health, safety, and property. See Kachalsky v. Cty. of Westchester, 701 F.3d 81, 97 (2d Cir. 2011) ("New York has substantial, indeed compelling, governmental interests in protecting public safety."); Schall v. Martin, 467 U.S. 253, 2644 (1984) (recognizing a "'legitimate and compelling state interest' in protecting the community from crime"). And there are no allegations that the City did not reasonably believe it faced an emergency situation.

Plaintiffs merely claim that the emergency situation in June 2020 was not so dire as to warrant a citywide, week-long curfew. However, in their opposition, Plaintiffs simply ignore the City's arguments that Plaintiffs' attempts to minimize the emergency situation are

---

[3] See Emergency Executive Order No. 117, June 1, 2020 (ordering a curfew from 11:00 p.m. on June 1, 2020 until 5:00 a.m. on June 2, 2020), at: https://www1.nyc.gov/assets/home/downloads/pdf/executive-orders/2020/eeo-117.pdf (last accessed on March 17, 2021).

[4] See Ex. C. (ordering a curfew from 8:00 p.m. on June 2, 2020 until 5:00 a.m. on June 3, 2020); Ex. D (ordering a daily curfew between 8:00 p.m. and 5:00 a.m., beginning on June 3, 2020 and ending on June 8, 2020). Exhibits referenced herein are annexed to the Declaration of Edward L. Murray in Support of City Defendants' Motion to Dismiss, dated December 10, 2020.

[5] See Ex. E (order ending the curfew on June 7, 2020).

implausible. Instead, Plaintiffs contradict themselves on this point, first suggesting that the situation was not so dire because defendants did not call on the National Guard, see Compl. ¶ 21, but now suggesting that the issue of the National Guard is of no moment because the NYPD is purportedly "one of the largest and most sophisticated para-military organizations in the world," Opp. at 19-20. Plaintiffs also misleadingly cite statements by defendants about the scale of the criminal activity from days before enactment of the curfew,[6] see Opp. at 8, notwithstanding the fact that the civil unrest *escalated* during that period, see Compl. ¶ 29. Additionally, Plaintiffs' suggestion that a measure designed to address an emergency situation in a city with eight million people is overbroad because it affected eight million people and not a population the size of Asheville, North Carolina, in the 1970s, is absurd. See Opp. at 19. And Plaintiffs' suggestion that the curfew was overbroad because it was in effect for six nights, instead of two nights, ignores the fact that the City initially attempted a more modest approach and ultimately ended the curfew early. Id.; see also Moorhead v. Farrelly, 723 F. Supp. 1109, 1113 (D.V.I. 1989) (noting that the curfew was modified "as the conditions warranted"). If the City had as little regard for constitutional rights as Plaintiffs claim, it would not have taken these steps to temper the curfew's effects. See Holmes v. Air Line Pilots Ass'n, 745 F. Supp. 2d 176, 193 (E.D.N.Y. 2010) ("The plausibility standard is not met where factual allegations, taken as true, are . . . not only compatible with, but indeed more likely explained by, lawful . . . behavior.").

Additionally, when reviewing a general, content-neutral measure to address civil unrest, such as the curfew, courts do not typically "consider the availability of other

---

[6] Contrary to Plaintiffs' claim, the City does not concede that "all of defendants' public statements regarding the curfew" are incorporated by reference. Opp. at 7, fn. 6. The City annexed to its motion a transcript of a press conference during which defendants made statements that Plaintiffs quoted in the Complaint. See Compl. ¶ 39; Holmes v. Air Line Pilots Ass'n, 745 F. Supp. 2d 176, 193 (E.D.N.Y. 2010). Also in its motion, the City cites articles, which demonstrate that the media coverage of the events leading to the curfew, which Plaintiffs reference in the Complaint, generated substantial and widespread interest. See Compl. ¶¶ 15, 30.

governmental responses which could end disorder yet place fewer restrictions on travel, free speech, and assembly." See Glover v. District of Columbia, 250 A.2d 556, 560 (D.C. Cir. 1968). Nonetheless, it should be noted that, even under heightened scrutiny, allegations that the curfew may have been broader than necessary are not enough for Plaintiffs to avoid dismissal because it is well recognized that "public officials may not be able to craft precisely tailored rules" early on in a crisis. Calvary Chapel Dayton Valley v. Sisolak, 140 S. Ct. 2603, 2605 (2020) (Alito, J., dissenting); see also Roman Catholic Diocese, 141 S. Ct. at 70 (Gorsuch, J., concurring) (distinguishing review of actions taken in the opening months of the pandemic and review of actions taken months later). This is so even where a challenged action is subject to strict scrutiny. See Bayley's Campground, Inc. v. Mills, 985 F.3d 153 (1st Cir. 2021) (upholding a quarantine requirement though it may have been "more restrictive than necessary" in hindsight as defendants appeared to take the view that the "risk of taking a less cautious approach…was not acceptable when so little was known about the novel virus"). Thus, while Plaintiffs may deem it appropriate to apply "exacting strict scrutiny" to a temporary curfew that the City enacted nine months ago to address an increasingly violent situation in the middle of large demonstrations during a deadly pandemic, courts would reasonably exercise a "measure of humility." Agudath Isr. v. Cuomo, 983 F.3d 620, 635 (2d Cir. 2020). Moreover, during the curfew, Plaintiffs could have exercised their assembly, speech, or local travel rights outdoors in the City for 15 hours a day and they could have met virtually or expressed themselves online during the curfew hours. These were acceptable alternatives under the circumstances. See Geller v. Cuomo, 476 F.Supp.3d 1, 16 (S.D.N.Y. 2020); Moorhead, 723 F. Supp. at 1113.

At bottom, there is no meaningful way for a court to draw the kind of lines regarding the scope of the curfew that Plaintiffs are asking this court to draw. See Chalk, 441

F.2d at 1282 (Courts do not have "any means of measuring precisely the impact of any one emergency restriction on the level of or potential for violence"). Recognizing as much, Plaintiffs now appear to contest the existence of an emergency situation. See Opp. at 18. Contrary to Plaintiffs' claim, the City did not state that the emergency declaration is "conclusive proof of its own necessity." Id. at 16. Rather, until their opposition papers, Plaintiffs alleged only that the situation in June 2020 did not warrant a citywide, week-long curfew. See Compl. ¶ 42. In fact, in their Complaint, Plaintiffs alleged that a curfew that had a "more narrow location restriction" or a "less prohibitive time frame" would have "at least been arguably justified." Id. ¶¶ 46-47. Thus, like the case law Plaintiffs try to distinguish, the Complaint acknowledges that the situation in June 2020 warranted the use of the City's emergency powers.[7] See Opp. at 18-19. Additionally, on this point, Plaintiffs rely solely on case law relating to procedural due process claims, which are not raised here. Id. at 15, 18. To the extent such case law is relevant, allegations regarding the incremental implementation of a short-lived curfew only after days of escalating unrest demonstrate that the City did not invoke its emergency power "in an abusive or arbitrary manner." See Catanzaro v. Weiden, 188 F.3d 56, 62 (2d Cir. 1999); see also DiBlasio v. Novello, 413 Fed. Appx. 352, 358 (2d Cir. 2011) (rejecting "exacting hindsight analysis" of the invocation of an emergency procedures). Plaintiffs' belated contention over the existence of an emergency is a blatant attempt to postpone dismissal, which the Court should reject.

Given the above, Plaintiffs are wrong that discovery is necessary before the Court can properly dismiss claims regarding the validity of the curfew (even if it were subject to heightened scrutiny). While reasonable inferences are to be drawn in Plaintiffs' favor, the Court

---

[7] Although Plaintiffs cite a purportedly contradictory statement by a single official about the utility of a curfew, see Opp. at 9, it cannot undermine the City's reasonable belief that the curfew was necessary. See Scheuer v. Rhodes, 416 U.S. 232, 247 (1972) ("[B]y the very existence of some degree of civil disorder, there is often no consensus as to the appropriate remedy.").

is not required to disregard "alternative explanations so obvious that they render [Plaintiffs'] inferences unreasonable," namely, that the City implemented the curfew in good faith and was fully justified in doing so. L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 430 (2d Cir. 2011); see also Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) ("Determining whether a complaint states a plausible claim for relief . . . will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). Accordingly, the Court should dismiss all claims relating to the validity of the curfew.

### C. Plaintiffs fail to state a Fourth Amendment claim.

While the curfew is entirely valid for all of the above reasons, to be clear, Plaintiffs' suggestion that the curfew amounted to the imprisonment of millions in violation of the Fourth Amendment, thus purportedly requiring strict scrutiny, is baseless. See Compl. ¶ 62; Opp. at 5. To state a Fourth Amendment claim, Plaintiffs must establish that the curfew constitutes a seizure and that the seizure is unreasonable. See Estate of M.D. v. New York, 241 F. Supp. 3d, 413, 423 (S.D.N.Y. 2017). Whether a seizure is reasonable "typically depends on an analysis that reflects a 'careful balancing of governmental and private interests." Harrell v. City of New York, 138 F. Supp. 3d 479, 488 (S.D.N.Y. 2015) (citing Soldal v. Cook Cty., Ill., 506 U.S. 56, 71 (1992). Plaintiffs fail to cite a single case in which a court found that a temporary curfew, on its face, constituted a Fourth Amendment violation and instead cite irrelevant cases, namely, Doe v. Bolton, 410 U.S. 179 (1973),[8] which involved abortion statutes, and Wallace v. Kato, 549 U.S. 384 (2007), which addressed a statute of limitations issue. At the least, given the exigencies of the moment and the government interest in maintaining civil order, the curfew was reasonable. Thus, Plaintiffs' Fourth Amendment claim should be dismissed.

---

[8] Plaintiffs mistakenly state that the caption is "Roe v. Wade" and misread the decision, which contrasts the Fourth Amendment with fundamental rights, such as the right to marry, procreate, and raise children. See Opp. at 5; Bolton, 410 U.S. at 211-213.

## II. THE NAMED PLAINTIFFS' ARRESTS WERE VALID AND SO THEIR FALSE ARREST CLAIMS SHOULD BE DISMISSED.

Plaintiffs maintain that the Court cannot decide the lawfulness of the curfew at this stage of the litigation, and therefore, the false arrest claim cannot be dismissed. See Opp. at 20-21. As discussed, *supra*, Plaintiffs are incorrect: the Court can and should determine that the curfew was lawful. As discussed in the City's moving papers, as the curfew was valid there was probable cause for the arrests of the named Plaintiffs. However, even if this Court determines the curfew was unlawful, the Plaintiffs' false arrest claims also fail pursuant to qualified immunity.

Qualified immunity is applicable regardless of "whether a government actor's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Pearson v. Callahan, 555 U.S. 223, 231 (2009); Hunter v. Bryant, 502 U.S. 224, 229 (1991) (per curiam) ("the qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"). Here, it was reasonable for officers to believe the curfew was valid when they arrested the Plaintiffs. The Mayor enacted the curfew to combat heightened violence in the community, and to ensure public safety. Therefore, it was reasonable for the officers to rely on the curfew when they arrested the Plaintiffs, who, by their own admissions, were violating the curfew. Even if the Court were to find that the lawfulness of the curfew cannot be determined at this time, any officer would still be entitled to qualified immunity.

Additionally, in footnote 21, Plaintiffs argue the Court cannot dismiss the "class claim" for false arrest; Plaintiffs assert probable cause is lacking for the "the other millions of individuals subjected to false arrest simply by virtue of the imposition of the curfew." See Opp. at 21, n.21. This argument is both baseless and incorrect. First, Plaintiffs cannot assert a class claim without a proper class certification, which is missing here. FED. R. CIV. P. 23(c)(1); Baxter

v. Palmigiano, 425 U.S. 308, 310 n.1 (1976) ("Without such certification and identification of the class, the action is not properly a class action."); (Binson v. J.E. Robert Co., No. 03-CV-3562, 2006 U.S. Dist. LEXIS 101012 at *41 (E.D.N.Y. June 27, 2006) ("…in the absence of certification, there is no class action."). Further, as Plaintiffs are not a certified class, Plaintiffs lack standing to bring the claims of third parties not before this Court. See Kowalski v. Tesmer, 543 U.S. 125, 129 (2004) ("We have adhered to the rule that a party 'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'"). Plaintiffs cannot attempt to save their false arrest claims through a purported class claim that is not properly before the Court, and therefore, these claims should be dismissed.

### III. THE COURT SHOULD DISMISS THE COMPLAINT IN ITS ENTIRETY AS AGAINST DEFENDANT DE BLASIO IN HIS INDIVIIDUAL CAPACITY.

Plaintiffs' opposition does not adequately address the argument that Mayor de Blasio is entitled to qualified immunity for enacting the curfew or that he is personally liable for their enforcement. With respect to qualified immunity, Plaintiffs conflate the issue of the standard of review for a constitutional claim with the issue of whether there is a clearly established constitutional right. Under Plaintiffs' reasoning, any claim that is subject to strict scrutiny is not subject to qualified immunity. Plaintiffs' reasoning has no basis in law. With respect to individual capacity claims, the City is not disputing that Mayor de Blasio could be a policy maker; rather, the City is arguing that Plaintiffs did not allege that he was personally involved establishing the purportedly unconstitutional enforcement policy. The mere fact that he is mayor does not establish that he is personally involved in setting all policy for the City. The Court should dismiss the Complaint as against Mayor de Blasio in his individual capacity.

**CONCLUSION**

For the reasons set forth in the City's moving papers and those stated herein, the Court should grant the City's motion to dismiss.

Dated:   New York, New York
         March 17, 2021

Respectfully submitted,

GEORGIA M. PESTANA
Acting Corporation Counsel of the City of New York
Attorney for City Defendants
100 Church Street
New York, New York 10007
(212) 356-4036

By:   /s/
EDWARD L. MURRAY
ERIN T. RYAN
Assistant Corporation Counsels