**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

LAMEL JEFFERY, *et al.*,

        Plaintiffs on Behalf of
        Themselves and Others
        Similarly Situated,

      v.

THE CITY OF NEW YORK, *et al.*,

        Defendants.

No. 20 Civ. 02843 (NGG)(RML)

# GOVERNOR ANDREW M. CUOMO'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS THE COMPLAINT

December 10, 2020

CLARICK GUERON REISBAUM LLP
Nicole Gueron
Emily A. Weissler
220 Fifth Avenue, 14th Floor
New York, NY 10001
212.633.4310
*Attorney for Defendant Andrew M. Cuomo*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.....................................................................................................iii

PRELIMINARY STATEMENT ..............................................................................................1

STATEMENT OF FACTS.......................................................................................................4

ARGUMENT...........................................................................................................................6

I.    Applicable Law ............................................................................................................6

II.   Plaintiffs Failed to Adequately Allege Any Personal Involvement by Governor Cuomo in
      the Issuance of Any of the Curfew Orders or in their Enforcement .......................................7

III.  The Curfew Was a Permissible Exercise of the City's Emergency
      Powers and Did Not Violate Plaintiffs' Constitutional Rights..............................................11

          A.   The Curfew Did Not Unconstitutionally Impinge on
               Plaintiffs' First Amendment Rights...........................................................................15

IV.   Plaintiffs Fail to State a Claim for Selective Enforcement of the Curfew ...........................17

V.    Governor Cuomo is Entitled to Qualified Immunity..........................................................20

VI.   Plaintiffs' Municipal Liability Claim Against Governor Cuomo Must be Dismissed ..........23

VII.  Plaintiffs' Complaint Should be Dismissed With Prejudice as to Governor Cuomo Because
      Leave to Amend Would be Futile .....................................................................................24

CONCLUSION......................................................................................................................25

## TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*Anderson v. Creighton,*
  483 U.S. 635 (1987) ...............................................................................21

Anthony v. City of New York,
  339 F.3d 129 (2d Cir. 2003)..................................................................24

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) .................................................................................6

*Askins v. Doe No. 1,*
  727 F.3d 248 (2d Cir. 2013)..................................................................23

*Back v. Hastings on Hudson Union Free Sch. Dist.,*
  365 F.3d 107 (2d Cir. 2004)....................................................................8

*Bar-Levy v. Gerow,*
  2020 WL 814925 (S.D.N.Y. Feb. 19, 2020) .......................................17

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) .................................................................................6

*Bright v. Nunn,*
  448 F.2d 245 (6th Cir. 1971)................................................................12

*Brown v. New York City Hous. Auth.,*
  2006 WL 1378599 (S.D.N.Y. May 17, 2006).......................................10

*Bykofsky v. Borough of Middletown,*
  429 U.S. 964 (1976) ...............................................................................13

*Chambers v. Time Warner, Inc.,*
  282 F.3d 147 (2d Cir. 2002)....................................................................6

*Colon v. Coughlin,*
  58 F.3d 865 (2d Cir. 1995)......................................................................8

*Columbus Ale House, Inc. v. Cuomo,*
  2020 WL 6118822 (E.D.N.Y. Oct. 16, 2020)......................................13

*Cuoco v. Moritsugu,*
  222 F.3d 99 (2d Cir. 2000)....................................................................24

*District of Columbia v. Wesby,*
    138 S. Ct. 577 (2018)...........................................................................21

*Falcon v. City Univ. of New York,*
    2016 WL 3920223 (E.D.N.Y. July 15, 2016) .........................................20

*Farid v. Ellen,*
    593 F.3d 233 (2d Cir. 2010)....................................................................7

*Gee v. New York City Health & Hosp. Corp.,*
    2020 WL 3618454 (S.D.N.Y. July 2, 2020) ............................................8

*Geller v. Cuomo,*
    2020 WL 4463207 (S.D.N.Y. Aug. 3, 2020) .........................................17

*Geller v. de Blasio,*
    --- F. Supp. 3d.---, 2020 WL 2520711 (May 18, 2020)....................15, 16

*Giordano v. City of New York,*
    274 F.3d 740 (2d Cir. 2001).....................................................................7

*Grullon v. City of New Haven,*
    720 F.3d 133 (2d Cir. 2013)......................................................................7

*Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.,*
    452 U.S. 640 (1981) ...............................................................................15

*Hobbs v. City of Westchester,*
    397 F.3d 133 (2d Cir. 2005)...............................................................15, 16

*Hope v. Pelzer,*
    536 U.S. 730 (2002) ...............................................................................20

*Hsin v. City of New York,*
    779 F. App'x 12 (2d Cir. 2019)...............................................................19

*Hu v. City of New York,*
    927 F.3d 81 (2d Cir. 2019)................................................................17, 19

*Hutchinson v. Deutsche Bank Secs. Inc.,*
    647 F. 3d 479 (2d Cir. 2011)...................................................................24

*Jacobson v. Commonwealth of Massachusetts,*
    197 U.S. 11 (1905) .............................................................................12, 22

*Jones v. Town of E. Haven*,
  691 F.3d 72 (2d Cir. 2012) .................................................................................23

*Lanning v. City of Glens Falls*,
  908 F.3d 19 (2d Cir. 2018) .................................................................................18

*LeClair v. Saunders*,
  627 F.2d 606 (2d Cir. 1980) ...............................................................................19

*Lederman v. New York City Dep't of Parks & Rec.*,
  731 F.3d 199 (2d Cir. 2013) ...............................................................................16

*Lee v. Town of Southampton*,
  2020 WL 1237198 (E.D.N.Y. Feb. 21, 2020),
  *report & recommendation adopted*,
  2020 WL 1234200 (E.D.N.Y. Mar. 13, 2020) .....................................................10

*Leneau v. Ponte*,
  2018 WL 566456 (S.D.N.Y. Jan. 25, 2018) ..........................................................9

*Liberian Cmty. Assoc. of Conn. v. Lamont*,
  970 F.3d 174 (2d Cir. 2020) ................................................................. 21, 22, 23

*Lilakos v. New York City*,
  2016 WL 11395018 (E.D.N.Y. Jan. 21, 2016),
  *report and recommendation adopted,* 2016 WL 5928674
  (E.D.N.Y. Sept. 30, 2016), *aff'd,* 808 Fed. Appx. 4 (2d Cir. 2020) ...........................10

*Marom v. Town of Greenburgh*,
  2020 WL 978514 (S.D.N.Y. Feb. 28, 2020) ........................................................17

*McNaughton v. de Blasio*,
  2015 WL 468890 (S.D.N.Y. Feb. 4, 2015),
  *aff'd* 644 Fed. Appx. 32 (2d Cir. 2016) ...............................................................7

*Monell v. Dep't of Social Servs.*,
  436 U.S. 658 (1978) ...........................................................................................23

*Moorhead v. Farrelly*,
  723 F. Supp. 1109 (D.V.I. 1989) .........................................................................16

*Morisset v. Cnty. of Nassau*,
  2017 WL 5312135 (E.D.N.Y. Nov. 13, 2017) ....................................................7, 8

*Mullenix v. Luna*,
  136 S. Ct. 305 (2015) .........................................................................................21

*Murphy v. Palmer*,
   2017 WL 2364195 (D.N.J. May 31, 2017) ........................................................... 12

*Nat'l Rifle Ass'n of Am. v. Cuomo*,
   2019 WL 2075879 (N.D.N.Y. May 10, 2019) ..................................................... 18

*Occupy Nashville v. Haslam*,
   769 F.3d 434 (6th Cir. 2014) ............................................................................... 21

*Plumhoff v. Rickard*,
   134 S. Ct. 2012 (2014) ........................................................................................ 21

*Poole v. New York*,
   2012 WL 727206 (E.D.N.Y. Mar. 6, 2012) ......................................................... 21

*Porter v. Half Hollow Hills Central Sch. Dist.*,
   2019 WL 4696384 (E.D.N.Y. Sept. 26, 2019) ..................................................... 20

*Radwan v. Univ. of Conn. Bd. of Trustees*,
   465 F. Supp. 3d 75 (D. Conn. 2020) ................................................................... 18

*Ramos v. Town of Vernon*,
   353 F.3d 171 (2d Cir. 2003) ................................................................................ 14

*Reichle v. Howards*,
   556 U.S. 658 (2012) ............................................................................................ 21

*Reynolds v. Barrett*,
   685 F.3d 193 (2d Cir. 2012) ................................................................................ 18

*Richard v. Fischer*,
   38 F. Supp. 3d 340 (W.D.N.Y. 2014) .................................................................. 18

*Rodriguez v. City of New York*,
   291 F. Supp. 3d 396 (S.D.N.Y. 2018) ................................................................. 14

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
   --- S. Ct. ---, 2020 WL 6948354 (Nov. 25, 2020) ......................................... 15, 16

*Schall v. Martin*,
   467 U.S. 253 (1984) ............................................................................................ 12

*Schleifer v. City of Charlottesville*,
   159 F.3d 843 (4th Cir. 1998) .............................................................................. 12

*See Rosario v. Town of Mt. Kisco*,
    2020 WL 764280 (S.D.N.Y. Feb. 14, 2020) ......................................................................19

*Segal v. City of New York*,
    459 F.3d 207 (2d Cir. 2006) ..............................................................................................23

*Smith v. Avino*,
    91 F.3d 105 (11th Cir. 1996), *abrogated on*
    *other grounds by Steel Co. v. Citizens for a Better Env.*, 523 U.S. 83 (1998) .........................12

*Sotolongo v. New York State Dep't of Motor Vehicles*,
    2020 WL 4261194 (E.D.N.Y. July 24, 2020) ......................................................................6

*TufAmerica, Inc. v. Diamond*,
    968 F. Supp. 2d 588 (S.D.N.Y. 2013) ..................................................................................7

*U.S. v. Chalk*,
    441 F.2d 1277 (4th Cir. 1971), *cert. denied*, 404 U.S. 943 (1971) .........................................12

*Vasquez v. City of New York*,
    2000 WL 869492 (S.D.N.Y. June 29, 2000) ........................................................................7

*Ward v. Rock Against Racism*,
    491 U.S. 781 (1989) ..........................................................................................................15

*Weinreb v. Xerox Bus. Servs, LLC Health & Welfare Plan*,
    323 F. Supp. 3d 501 (S.D.N.Y. 2018) ................................................................................24

*Williams v. City of New York*,
    2005 WL 2862007 (S.D.N.Y. Nov. 1, 2005) ........................................................................7

*Wood v. Moss*,
    572 U.S. 744 (2014) ..........................................................................................................21

*Wright v. Orleans Cnty.*,
    2015 WL 5316410 (W.D.N.Y. Sept. 10, 2015),
    *report and recommendation adopted,*
    2015 WL 13660397 (W.D.N.Y. Oct. 27, 2015) ....................................................................8

*Ying Li v. City of New York*,
    246 F. Supp. 3d 578, (E.D.N.Y. Mar. 31, 2017) ...............................................................8, 9

*Yousef v. Cnty. of Westchester*,
    2020 WL 2037177 (S.D.N.Y. Apr. 28, 2020) ......................................................................23

*Zalaski v. City of Bridgeport Police Dep't,*
   613 F.3d 336 (2d Cir. 2010).................................................................................15


**Rules & Statutes**

42 U.S.C.A. § 1983 ...................................................................................passim

F.R.C.P. Rule 12 ..........................................................................................1, 6

N.Y.C. Charter, Code, Amendements and Rules § 8 ................................11

N.Y.C. Charter, Code, Amendements and Rules § 431 ............................11

N.Y. Exec. Law § 190 .................................................................................11

Defendant Governor Andrew M. Cuomo respectfully submits this memorandum of law in support of his motion, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing plaintiffs' Complaint with prejudice, as asserted against him in his individual capacity (ECF No. 1).[1]

## PRELIMINARY STATEMENT

In late May 2020, protests swept across the United States—including in New York City—in response to the May 25, 2020 killing of George Floyd by Minneapolis police officers. Governor Cuomo publicly supported the protestors and their efforts to draw attention to the history of discrimination and racism in this country. But the protests did not happen in a vacuum: they happened while the first wave of the COVID-19 pandemic was ravaging New York City. And although the protests were largely peaceful, plaintiffs concede that they were marred by episodic looting, destruction of property, and violence (Complaint (ECF No. 1) ¶¶ 14-16), which affected the health, welfare, and safety of the public at large. In response, on June 1, Mayor Bill de Blasio issued an Emergency Executive Order imposing a curfew on the City for one night. Mayor de Blasio thereafter extended the curfew to June 7 and oversaw its enforcement by the New York City Police Department ("NYPD").[2] Governor Cuomo did not issue any of the Curfew Orders or enforce them (and did not have the authority to enforce them). Rather, the Mayor of New York City was authorized to issue the Curfew Orders and to oversee their enforcement—and he did so.

---

[1] The Complaint asserts claims against Governor Cuomo in both his official and individual capacities. The parties agreed to dismiss with prejudice all of the official capacity claims; that stipulation was filed with the Court on November 23, 2020. (ECF No. 18.)

[2] The Governor will refer to the Mayor's June 1st Emergency Executive Order, his June 2nd extension, and all other related Emergency Executive Orders, collectively, as "Curfew Orders" or "Orders."

This purported class action lawsuit challenges the constitutionality of the Curfew Orders, alleging that they were illegal both as issued and as enforced.  Plaintiffs have sued a broad array of defendants, including Mayor de Blasio, the City of New York, 50 unnamed NYPD officers, and Governor Cuomo.  However, applicable law and pleading standards compel dismissal of all claims against Governor Cuomo for several independent reasons.

*First*, plaintiffs' claims against Governor Cuomo, in his individual capacity, do not plausibly allege his personal involvement in *any* of the challenged conduct.  Virtually all of the allegations in the Complaint are undifferentiated group pleadings that cannot withstand a motion to dismiss.  And the very sparse allegations that refer to the Governor specifically are contradicted by the documents incorporated by reference into the Complaint—namely, the Emergency Executive Orders issued by Mayor de Blasio—which make clear that the Mayor, not the Governor, issued and enforced the Curfew Orders.  This fact alone supports dismissal of the claims against the Governor, which appear to encompass every single count of the Complaint.

*Second*, even assuming *arguendo* that the Complaint sufficiently pled specific conduct by the Governor, plaintiffs' claims related to the curfew's legality (Counts One through Four) still fail because the temporary curfew was facially lawful.  The allegations themselves, and documents incorporated by reference, demonstrate that the Mayor issued the limited, nighttime curfew in response to ongoing property destruction and violence in New York City—similar to circumstances under which other curfews have been held to be lawful.  Further, plaintiffs (and other New Yorkers) remained free to travel, protest, and otherwise assemble during the sixteen hours per day the curfew was not in effect, conceded facts that undermine any claim that the curfew was unconstitutional.

*Third*, plaintiffs' claim (in Count Five) that the Curfew Orders were selectively enforced against Blacks and other people of color, in violation of the Equal Protection Clause, also fails as against Governor Cuomo as a matter of law.  To adequately plead a claim for selective enforcement, a plaintiff must (i) provide examples of individual comparators who were treated differently and (ii) plead that this selective treatment was motivated by an intent to discriminate. Here, plaintiffs pled neither.  Moreover, plaintiffs' selective enforcement claim (like the other claims in the Complaint) fails to plausibly allege that Governor Cuomo played any role in the Orders' enforcement.

*Fourth*, in the unlikely event that the Court finds the Complaint sufficiently pled with regards to the curfew's legality, the claims against Governor Cuomo would still have to be dismissed because the Governor would then be entitled to qualified immunity.  Plaintiffs do not identify a clearly established right to be free from a short-lived nighttime curfew during times of civil unrest—as required to defeat the Governor's qualified immunity argument.

*Fifth*, to the extent plaintiffs attempt to assert in Count Six a *Monell* claim (i.e., *municipal* liability) against Governor Cuomo in his individual capacity, such an attempt fails.  This claim cannot be maintained against an individual defendant, especially one who is not even a municipal employee.

For any or all of these independent reasons, the Complaint should be dismissed against Governor Cuomo, and the Court should deny leave to amend because such amendment would be futile.

## STATEMENT OF FACTS

In May 2020, New York City was the midst of the first wave of the COVID-19
pandemic.  ¶¶ 48, 64.[3]  Then, precipitated by the May 25, 2020 killing of George Floyd in police
custody, beginning on May 28, 2020, thousands of marchers, protestors, and demonstrators took
to the streets in New York City to participate in protests against police brutality.  ¶ 11.  Those
protests included, as plaintiffs acknowledge, incidents of criminal looting, destruction of
property, and violence in at least three of New York City's five boroughs.  ¶¶ 14-16.

In response to the increasing tumult, on June 1, 2020, Mayor Bill de Blasio issued
Emergency Executive Order No. 117, which noted that the City was operating under COVID-
related declarations of emergency, and that "peaceful demonstrations . . . were subsequently
escalated, by some persons, to include actions of assault, vandalism, property damage, and/or
looting."[4]  ¶ 17; Ex. 1.  Emergency Executive Order No. 117 stated that the "violent acts have
been happening primarily during the hours of darkness, and it is especially difficult to preserve
public safety during such hours."  ¶ 28; Ex. 1.  Pursuant to his emergency powers, the Mayor
imposed a curfew on New York City from 11:00 p.m. on June 1st until 5:00 a.m. on June 2nd.
¶ 17; Ex. 1.  Over the next few days, as the unrest continued, Mayor de Blasio issued additional
Emergency Executive Orders extending the curfew so that it would begin at 8:00 p.m., not at
11:00 p.m., and would be in effect each evening through June 8th.  ¶ 19, Exs. 2-5.  The curfew
had exemptions for police officers, firefighters, and other first responders, as well as individuals

---

[3] Unless noted, citations to ¶ refer to the Complaint.  Citations to "Ex." refer to the exhibits to the
declaration of Nicole Gueron, dated December 10, 2020.

[4] When Mayor de Blasio issued Emergency Executive Order No. 117, New York City was
already subject to a statewide COVID-19 emergency declaration issued by Governor Cuomo on
March 7, 2020, and a city-wide COVID-19 State of Emergency Declaration, which had been in
effect since March 12, 2020.  (Ex. 1.)

traveling to and from essential work and performing essential work.  ¶ 27 n. 4, Exs. 1-4.

On June 7, 2020, the Mayor issued an Emergency Executive Order ending the curfew one day early.  Ex. 5.  Subsequently, plaintiffs filed this purported class action complaint against Mayor de Blasio, the City of New York, fifty unnamed NYPD police officers, and Governor Cuomo, seeking monetary damages for the alleged wrongdoing.  ¶¶ 86-89.  Plaintiffs Lamel Jeffery, Thaddeus Blake, and Chayse Pena each admittedly violated the curfew and were stopped by the NYPD for those violations.  ¶¶ 99, 102, 104, 105, 110, 112, 117.  Each of these plaintiffs alleges that the violations he suffered are typical of those suffered by the proposed class members.  ¶ 92.

Plaintiffs contend that the issuance and enforcement of the Curfew Orders during the ongoing pandemic and in the midst of the protests violated their constitutional rights.  *First*, plaintiffs contend that the curfew itself was unconstitutional.  More specifically, plaintiffs allege that the curfew inhibited the ability of "millions to simply go outside for fresh air in the evening" or "exercise their right to speech and assembly."  ¶ 53.  Plaintiffs acknowledge that their freedom of movement was impaired for only nine hours per day—throughout the majority of the daytime, plaintiffs and all other New Yorkers were free to travel and protest as they wished—but nonetheless allege they were falsely imprisoned in their own homes as a result of the curfew.  ¶¶ 62-64.  *Second*, plaintiffs contend that the curfew and the accompanying punishment for its violation (up to a Class B misdemeanor) were grossly disproportionate to the curfew's stated safety goals.  ¶¶ 43-44, 65-71.  *Third*, plaintiffs contend that that the curfew was disproportionally enforced by the NYPD against Blacks and other people of color.  ¶¶ 58-61. *Finally*, plaintiffs allege a *Monell* claim:  that the "City, acting through the NYPD, maintained an express policy, custom and practice of unconstitutional Curfew Orders . . . ."  ¶ 119.

**ARGUMENT**

Plaintiffs' claims against the Governor should be dismissed with prejudice in their entirety in light of core legal deficiencies in the pleadings and the futility of permitting amendment.

## I.   Applicable Law

As this Court is aware, when considering a motion under Rule 12(b)(6), the court must accept as true the well-pleaded factual allegations in the complaint, but it need not accept legal conclusions, assertions unsupported by the facts, or unwarranted inferences. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). The assertion of a mere "conclusory statement[]" that a plaintiff has satisfied an element of a claim "do[es] not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," not merely "conceivable." *Twombly*, 550 U.S. at 570. This standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *Iqbal*, 556 U.S. at 678; where a complaint "pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id*. (quoting *Twombly*, 550 U.S. at 557).

On a motion to dismiss, the court may consider documents "central to a plaintiff's claim, documents sufficiently referred to so as to be deemed 'integral' to the complaint, and documents over which a court may take judicial notice." *Sotolongo v. New York State Dep't of Motor Vehicles*, 2020 WL 4261194, at *2 (E.D.N.Y. July 24, 2020) (Garaufis, J.); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (court may consider a document "not incorporated by reference" "where the complaint relies heavily upon its terms and effect") (internal citations omitted). Additionally, a court may "rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)." *Vasquez v. City of New York*, 2000 WL

869492, at *1 n. 1 (S.D.N.Y. June 29, 2000) (internal citations omitted).  If a document so considered "contradicts allegations in the complaint, the document, not the allegations, control[s], and the court need not accept the allegations in the complaint as true." *McNaughton v. de Blasio*, 2015 WL 468890, at *4 (S.D.N.Y. Feb. 4, 2015) (citing *TufAmerica, Inc. v. Diamond*, 968 F. Supp. 2d 588, 592, (S.D.N.Y. 2013)), *aff'd* 644 F. App'x 32 (2d Cir. 2016).

## II.   Plaintiffs Failed to Adequately Allege Any Personal Involvement by Governor Cuomo in the Issuance of Any of the Curfew Orders or in their Enforcement

Plaintiffs' Section 1983 claims against Governor Cuomo in his individual capacity (which appear to encompass every Count of the Complaint) must be dismissed because plaintiffs have not pled—and cannot plead—any *personal* involvement by the Governor in any of the activities or conduct at issue.

To state a viable Section 1983 claim, a plaintiff must allege that an individual, acting under color of State law, deprived the plaintiff of a federal statutory or constitutional right. *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001).  It is well established that to state a plausible claim for relief under Section 1983, a plaintiff must plead "the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013); *Morisset v. Cnty. of Nassau*, 2017 WL 5312135, at *3 (E.D.N.Y. Nov. 13, 2017) (citing *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010)) ("Where a Section 1983 claim fails to allege the personal involvement of the defendant, it fails as a matter of law.")  Generalized allegations are not sufficient to survive a motion to dismiss; rather, "the personal involvement of a defendant must be pleaded with specific factual support." *Williams v. City of New York*, 2005 WL 2862007, at *3 (S.D.N.Y. Nov. 1, 2005) (internal citations omitted) (granting motion to dismiss against the individual defendants because the complaint was insufficiently pled).  Nor can an individual defendant be held responsible "merely because he

held a high position of authority." *Morrisset*, 2017 WL 5312135, at \*4 (citing *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004)).

Personal involvement may be established by evidence of direct participation in the challenged conduct or by proof that the supervisory official's conduct satisfies one of the five factors required by *Colon v. Coughlin*. 58 F.3d 865, 873 (2d Cir. 1995); *Gee v. New York City Health & Hosp. Corp.*, 2020 WL 3618454, at \*3-4 (S.D.N.Y. July 2, 2020) (granting motion to dismiss Section 1983 claim against prison warden because the plaintiff failed to allege the defendant's personal involvement sufficiently). These factors are:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon*, 58 F.3d at 873. The only potentially applicable *Colon* factor here is the third—that the Governor created a "policy or custom" under which unconstitutional practices occurred—but plaintiffs' allegations are too generalized to satisfy this factor. *Id.*.

Separately, group pleadings fail, as a matter of law, to satisfy the Rule 8 pleading standard and should result in a dismissal. *See Ying Li v. City of New York*, 246 F. Supp. 3d 578, 598 (E.D.N.Y. 2017) (dismissing Section 1983 claims against the individual defendants for failure to allege personal involvement because "[p]leadings that do not differentiate which defendant was involved in the unlawful conduct are insufficient to state a claim."); *Wright v. Orleans Cnty.*, 2015 WL 5316410, at \*13 (W.D.N.Y. Sept. 10, 2015) (in a Section 1983 case, "group pleading is insufficient for purposes of Rule 8(a)(2) [of the F.R.C.P.]"), *report & recommendation adopted*, 2015 WL 13660397 (W.D.N.Y. Oct. 27, 2015).

8

Plaintiffs' Complaint does not adequately allege the Governor's individual involvement in the issuance and enforcement of any of the Curfew Orders—especially because the few, specific factual allegations concerning the Governor are rebutted by documents incorporated by reference into the Complaint.[5]  The Complaint includes only three references to Governor Cuomo, in paragraphs 2, 83, and 170.  (ECF No. 1.)  Even these paragraphs contain only conclusory, generalized statements that do not adequately specify the Governor's role in creating or enforcing any of the Curfew Orders.  For example, paragraph 2 of the Complaint states that "[u]nder a policy, pattern, and practice set and enforced by defendant city and state officials . . . Bill De Blasio, Andrew Cuomo, the City of New York . . . the New York City Police Department ('NYPD'), and New York City Police Officers unlawfully imprisoned an entire City by legally prohibiting individuals from leaving their homes for any lawful purpose during certain hours of the day/night . . . ."  (*Id.*)  This statement, and the others like it in the Complaint, are textbook examples of conclusory group pleading.  There is no specific allegation of anything Governor Cuomo *personally* said or did, much less anything he said or did that was unconstitutional.  Because the Complaint does not adequately "differentiate" which conduct was undertaken by Mayor de Blasio, by Governor Cuomo, or by any of the other defendants, the Complaint must be dismissed as against Governor Cuomo.  *Ying Li*, 246 F. Supp. 3d at 598; *see Leneau v. Ponte*, 2018 WL 566456, at *15 (S.D.N.Y. Jan. 25, 2018) (granting the individual defendant's motion to dismiss Section 1983 claim because the plaintiff's "general allegation that all defendants were involved in the alleged constitutional violations d[id] not rescue the claim[]").

---

[5] Plaintiffs' Complaint does not in any way distinguish which claims are asserted against which defendants—this reflects the overlapping nature of plaintiffs' allegations and leads to legal impossibilities.  For example, plaintiffs' *Monell* claim cannot be asserted against an individual defendant, but plaintiffs do not clearly limit this claim to the City of New York.  *See infra* at 23-24.

Moreover, the Complaint's sparse allegations against the Governor with respect to the issuance and enforcement of the Curfew Orders are contradicted by the Orders themselves, which are incorporated by reference into the Complaint. *See Lee v. Town of Southampton*, 2020 WL 1237198, at *15 (E.D.N.Y. Feb. 21, 2020) (dismissing complaint and noting that allegations asserting Section 1983 claims were contradicted by documents incorporated by reference into complaint), *report & recommendation adopted*, 2020 WL 1234200 (E.D.N.Y. Mar. 13, 2020); *Brown v. New York City Hous. Auth.*, 2006 WL 1378599, at *1 (S.D.N.Y. May 17, 2006) (dismissing complaint on statute of limitations grounds in reliance on incorporated documents disproving the date the plaintiff alleged that she filed her EEOC complaint).  Here, the Curfew Orders prove undeniably that Mayor de Blasio—not Governor Cuomo—issued and enforced the Curfew Orders.  *See* Ex. 1 (signed by Mayor de Blasio: "I hereby order a City-wide curfew"); Ex. 2 (signed by Mayor de Blasio: "I declared a state of emergency," "I hereby order a City-wide curfew"); Exs. 3-4 (same).  These documents—not the allegations in the Complaint—control. *See, e.g.*, *Lilakos v. New York City*, 2016 WL 11395018, at *5 (E.D.N.Y. Jan. 21, 2016) (dismissing a *Monell* claim against City of New York because the plaintiffs' claims were contradicted by documents), *report & recommendation adopted,* 2016 WL 5928674 (E.D.N.Y. Sept. 30, 2016), *aff'd,* 808 F. App'x 4 (2d Cir. 2020).[6]

---

[6] Plaintiffs may point the Court to a press release issued by the Governor on June 1, 2020, that states that the Governor and Mayor "announced a citywide curfew in New York City." Pressroom, "Governor Cuomo and Mayor de Blasio Announce Citywide Curfew in New York City Will Take Effect Beginning at 11 PM Tonight," *available at* https://www.governor.ny.gov/news/governor-cuomo-and-mayor-de-blasio-announce-citywide-curfew-new-york-city-will-take-effect (last visited Dec. 10, 2020).  This document should be recognized by the Court for what it is—a statement of support by Governor Cuomo, intended to convey his solidarity with the Mayor in the face of overlapping crises.  This press release is not an actionable legal document, unlike the "State and City Declarations of Emergency" relied on by Mayor de Blasio in his Emergency Executive Order No. 117 issuing the curfew.  *See* Ex. 1.

Additionally, plaintiffs allege that individual officers within the NYPD "implemented, enforced, perpetuated and/or allowed the unconscionable and unconstitutional enforcement activity to occur." ¶ 81. It is a matter of public record that the NYPD is supervised and directed by Mayor de Blasio, not by the Governor. *See, e.g.*, N.Y.C. Charter §§ 8 (setting forth general powers of the mayor including the ability to "exercise all powers vested in the city"), 431 (head of police department is appointed by the mayor); *cf.* N.Y. Exec. § 190 (Governor is "commander-in-chief of the militia of the state").

Plaintiffs' claims against Governor Cuomo should be dismissed because the sparse factual allegations in the Complaint about the Governor's purported role in issuing and enforcing the Curfew Orders are contradicted by the very Orders about which plaintiffs complain.

### III.   The Curfew Was a Permissible Exercise of the City's Emergency Powers and Did Not Violate Plaintiffs' Constitutional Rights

Plaintiffs allege that the imposition of a city-wide curfew in New York City, in response to looting and violence occurring in the midst of a global pandemic, was an unconstitutional violation of their rights—including their right to travel and move, as well as their First Amendment right to peaceably assemble. ¶¶ 133-151. Even setting aside the failure to plead the Governor's personal involvement, these claims should be dismissed as a matter of law because, in the circumstances alleged, Mayor de Blasio had the authority to issue and enforce the Curfew Orders.[7]

As courts have consistently recognized, there is a well-established "'legitimate and compelling state interest' in protecting the community from crime," which "constitutes a weighty

---

[7]  For this argument, Governor Cuomo also refers the Court to the motion papers filed by the City Defendants, because as the parties responsible for the Curfew Orders, they bear the burden of establishing the curfew's legality in the first instance.

social objective," because if "government cannot ensure the safety of its citizens, it has failed

them in the most fundamental sense." *Schleifer v. City of Charlottesville*, 159 F.3d 843, 847-48

(4th Cir. 1998) (citing *Schall v. Martin*, 467 U.S. 253, 264 (1984)); *see also Jacobson v.*

*Commonwealth of Massachusetts*, 197 U.S. 11, 38 (1905) (the "safety and the health of the

people" is principally entrusted to officials of the States to "guard and protect").  In evaluating

whether Mayor de Blasio's issuance of Emergency Executive Orders imposing the curfew was

lawful, the Court's review is limited to a "determination of whether the mayor's actions were

taken in good faith and whether there is some factual basis for his decision that the restrictions he

imposed were necessary to maintain order." *U.S. v. Chalk*, 441 F.2d 1277, 1281 (4th Cir. 1971),

*cert. denied*, 404 U.S. 943 (1971) (affirming constitutionality of curfew issued by mayor in

response to violence at a local high school); *see also Bright v. Nunn*, 448 F.2d 245, 248 (6th Cir.

1971) (affirming decision granting motion to dismiss because curfew issued in response to

violence on college campus was lawful, curfew was not imposed "in bad faith" or "motivated by

politics").

Moreover, "[c]ases have consistently held that it is a proper exercise of police power to

respond to emergency situations with temporary curfews that might curtail the movement of

persons who otherwise would enjoy freedom from restriction." *Smith v. Avino*, 91 F.3d 105, 109

(11th Cir. 1996), *abrogated on other grounds by Steel Co. v. Citizens for a Better Env.*, 523 U.S.

83 (1998) (affirming constitutionality of months-long nighttime curfew imposed on Dade

County, Florida in the wake of Hurricane Andrew, because "[i]n an emergency situation,

fundamental rights such as the right of travel and free speech may be temporarily limited or

suspended"); *see also Murphy v. Palmer*, 2017 WL 2364195, at *10 (D.N.J. May 31, 2017)

(noting that "courts have upheld the constitutionality of nighttime, citywide curfews as necessary

to preserve order in a state of emergency") (collecting cases).

The facts as pled demonstrate that Mayor de Blasio's Emergency Executive Orders imposing a limited, nighttime curfew on New York City were issued in good faith, in response to a volatile situation in New York City that made a curfew "necessary to protect the City and its residents from severe endangerment and harm to their health,[8] safety and property." ¶¶ 28, 29; *see also* Exs. 1-4. Plaintiffs' Complaint acknowledges that there were "incidents of looting, destruction of property, and violence by a small number of individuals" during nighttime hours in at least three of New York City's boroughs in late May and early June 2020. ¶¶ 11, 14, 16, 29. Although the Complaint insists there were less restrictive means of imposing a curfew on the City (¶¶ 42-46), plaintiffs misstate the legal standard by which Mayor de Blasio's conduct should be judged. And because the Curfew Orders were limited in duration (they lasted for less than a week) and scope (they applied at nighttime only), plaintiffs' arguments about a less restrictive or more targeted method of imposing order in an emergency situation fails.[9] Even accepting all of the allegations in the Complaint as true, plaintiffs do not contest that Mayor de Blasio acted in "good faith," with a "factual basis" underpinning his decision to impose a curfew—namely, the

---

[8] Although COVID-19 was not the articulated reason why the curfew was imposed, the pandemic was very much ongoing on June 1, 2020, and New York City had not yet entered any phase of the State's reopening plan. Federal courts have accorded wide latitude to governmental restrictions enacted to protect citizens' health, even though they may curtail their constitutional rights. *See, e.g.*, *Columbus Ale House, Inc. v. Cuomo*, 2020 WL 6118822, at *4 (E.D.N.Y. Oct. 16, 2020) (applying the standard set forth in *Jacobson* and affording Governor Cuomo's judgment "great deference" with respect to COVID-19 restrictions being challenged by the plaintiff).

[9] The Complaint's citation to *Bykofsky v. Borough of Middletown*, 429 U.S. 964, 964-65 (1976), for the proposition that "a curfew aimed at all citizens could not survive constitutional scrutiny," is entirely misleading. ¶ 25. That statement is in the *dissent* from a decision denying a petition for a writ of certiorari. It is not a legal ruling of the U.S. Supreme Court. And even that dissent acknowledges that a curfew may be warranted in a "genuine emergency." *Bykofsky*, 429 U.S. at 965.

"looting, destruction of property, and violence." ¶ 14.

Because the curfew was constitutional, each of plaintiffs' claims tied to its issuance should be dismissed as against Governor Cuomo as a matter of law. *First*, plaintiffs' generically pled claim (Count One) for deprivation of federal rights must fail if the curfew is constitutional because plaintiffs would be unable to plausibly allege their constitutional rights were violated. ¶¶ 126-31. *Second*, Count Two appears to allege a false arrest claim against all defendants based on purported violations of plaintiffs' Fourth Amendment rights under 42 U.S.C. § 1983. The Complaint alleges that plaintiffs were "arrested in their movements without and [*sic*] legitimate basis to do so under the law and without probable cause to believe that they have committed any crimes or violations of law." ¶ 134. To the extent this claim alleges false arrest, it must fail because, with a lawful curfew in place, the NYPD had probable cause to stop the individually named plaintiffs, each of whom admits in the Complaint to being outside at night in violation of the curfew. ¶¶ 99, 100, 105-06, 112-13. And, probable cause provides a "complete defense" to a false arrest claim. *Rodriguez v. City of New York*, 291 F. Supp. 3d 396, 409 (S.D.N.Y. 2018). *Third*, Count Four alleges violations of plaintiffs' Fourteenth Amendment rights, particularly that plaintiffs were "subjected and [*sic*] unreasonable deprivations of liberty, restrictions, and prohibitions on their freedom of travel and movement in the form of unconstitutional Curfew Orders." ¶ 148. However, because the pleadings substantiate that Mayor de Blasio issued the Curfew Orders in good faith, on a temporary basis in response to an emergency situation, they pass constitutional muster. *Cf. Ramos v. Town of Vernon*, 353 F.3d 171, 176 (2d Cir. 2003) (recognizing right to free movement and holding that juvenile curfew, not imposed in response to any emergency situation and not limited in duration, did not pass intermediate scrutiny).

A.      The Curfew Did Not Unconstitutionally Impinge on Plaintiffs' First Amendment
        Rights

In Count Three, plaintiffs allege that the Curfew Orders violated their First Amendment

rights to freedom of speech and to peaceably assemble.  ¶¶ 137-46.  The First Amendment,

however, "does not guarantee the right to communicate one's views at all times and places or in

any manner that may be desired.'"  *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 341

(2d Cir. 2010) (quoting *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 647

(1981)).  It is well established that "prior restraint on speech" "bears a heavy presumption against

constitutional validity" and "deserves strict scrutiny when it regulates speech on the basis of

content."  *Geller v. de Blasio*, --- F. Supp. 3d.---, 2020 WL 2520711, at *4 (May 18, 2020)

(citing *Hobbs v. City of Westchester*, 397 F.3d 133, 148-49 (2d Cir. 2005)) (denying TRO

challenging mayoral Executive Order restricting non-essential gatherings on the grounds that it

violated the First Amendment).  "But, when a regulation is content-neutral, the 'less stringent

test' of immediate scrutiny applies."  *Id.*

The Curfew Orders are content neutral—as written and as applied.  "A regulation that

serves a purpose unrelated to the content of expression is deemed neutral, even if it has an

incidental effect on some speakers or messages but not others."  *Ward v. Rock Against Racism*,

491 U.S. 781, 791 (1989).  A regulation is content neutral where it is "justified without reference

to the content of the regulated speech."  *Id.* (internal citations omitted).  Here, the Curfew Orders

were clearly content neutral because they were not a regulation of speech at all—they pertained

only to conduct.[10]  The prohibition did not bar New Yorkers from protesting, traveling, or

---

[10]  The is no valid comparison between the content neutral curfew at issue here and the COVID-
19 restrictions on occupancy at churches and synagogues, some of which were struck down by
the Supreme Court in *Roman Catholic Diocese of Brooklyn v. Cuomo*, --- S. Ct. ---, 2020 WL
6948354, at *2 (Nov. 25, 2020).  In *Roman Catholic,* the Supreme Court held the restrictions

otherwise exercising their First Amendment rights in the sixteen hours each day the curfew was *not* in effect.

Because the Curfew Orders were content neutral, immediate scrutiny applies.  Under this standard, a municipality may enact time, place, and manner restrictions on content neutral speech in public forums so long as "the measure is 'reasonable,'" "narrowly tailored to serve a significant government interest, and leave[s] open ample alternative channels for communication of the information."  *Geller*, 2020 WL 2520711, at *4 (citing *Hobbs*, 397 F.3d at 149); *see also Lederman v. New York City Dep't of Parks & Rec.*, 731 F.3d 199, 202 (2d Cir. 2013) (holding the government had a significant interest in "alleviating congestion and improving circulation" in New York City parks).  "[A] restriction need not be the least restrictive or least intrusive means of" addressing the substantial government interest.  *Geller*, 2020 WL 2520711, at *4.

Here, the Curfew Orders protected New Yorkers and their businesses from becoming victims of destruction and violence.  The curfew was reasonable and narrowly tailored:  It lasted less than a week, and, while it was in effect, citizens were unrestricted in their movements and actions other than for nine hours at night.  *See, e.g.*, *Moorhead v. Farrelly*, 723 F. Supp. 1109, 1113 (D.V.I. 1989) (affirming decision that curfew imposed following a hurricane did not violate the First Amendment when it was "enacted initially to curtail looting and further damage to persons and property," and was an "effective means of controlling or preventing imminent civil disorder").  Thus, Count Three of the Complaint should be dismissed because the curfew did not unconstitutionally limit plaintiffs' First Amendment rights.

---

were not "neutral" or of "general applicability" because they targeted "houses of worship for especially harsh treatment" (*id.* at *1-2)—unlike the Curfew Orders, which applied across the City to all New Yorkers other than first responders and essential workers.

### IV.     Plaintiffs Fail to State a Claim for Selective Enforcement of the Curfew

Count Five of the Complaint alleges that defendants violated the Equal Protection Clause of the U.S. Constitution.  ¶¶ 160-64.  Specifically, the Complaint states that the "Curfew Order was enforced against plaintiff [*sic*] in a manner that disparately affected them based on their racial demographic in violation of their rights as secured by the Fifth and Fourteenth Amendments of the Constitution."  ¶ 161.  Plaintiffs allege that "[o]ther similarly situated white residents have not been impacted or targeted in the same manner by these illegal Curfews . . . ." ¶ 163.  However, plaintiffs' claim for selective enforcement of the Curfew Orders against Blacks and other people of color is not adequately pled under well-established legal standards.

To state an equal protection claim based on the theory of selective enforcement, a plaintiff must demonstrate:  "(1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person." *Marom v. Town of Greenburgh*, 2020 WL 978514, at *6 (S.D.N.Y. Feb. 28, 2020), *reconsideration denied*, 2020 WL 2813309 (S.D.N.Y. May 29, 2020) (citing *Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019)).  "To satisfy the first prong, a plaintiff must identify a similarly situated comparator, and show that she was treated differently compared with that comparator."  *Geller v. Cuomo*, 2020 WL 4463207, at *13 (S.D.N.Y. Aug. 3, 2020) (denying preliminary injunction because the plaintiff did not identify a similarly situated comparator); *see also Bar-Levy v. Gerow*, 2020 WL 814925, at *5 (S.D.N.Y. Feb. 19, 2020) (granting the defendants' motion to dismiss the plaintiffs' selective enforcement claims regarding the enforcement of county codes and state criminal laws based on their religion because the plaintiffs

17

did not "allege any other comparator to which this Court can look to infer a selective

enforcement scheme").

At the motion to dismiss stage, "a court must determine whether, based on a plaintiff's

allegations in the complaint, it is plausible that a jury could ultimately determine that the

comparators are similarly situated.  Thus, [w]ell-pled facts showing that the plaintiff has been

treated differently from others similarly situated remains an essential component of such a claim

[and] [c]onclusory allegations of selective treatment are insufficient to state an equal protection

claim.'" *Nat'l Rifle Ass'n of Am. v. Cuomo*, 2019 WL 2075879, at *3 (N.D.N.Y. May 10, 2019)

(brackets in quotation); *see Lanning v. City of Glens Falls*, 908 F.3d 19, 29 (2d Cir. 2018)

(affirming dismissal of selective enforcement claim where the plaintiff failed to allege any

comparators).

Additionally, because Section 1983 claims are not subject to vicarious liability, "liability

for an Equal Protection Clause violation under § 1983 requires *personal* involvement by a

defendant, who *must* act with discriminatory purpose."  *Reynolds v. Barrett*, 685 F.3d 193, 204

(2d Cir. 2012) (emphasis added); *see also Richard v. Fischer*, 38 F. Supp. 3d 340, 355-56

(W.D.N.Y. 2014) (holding that a plaintiff in a Section 1983 action "has not alleged an equal

protection claim against all of the named Defendants" because the plaintiff's complaint consisted

of "conclusory" allegations); *Radwan v. Univ. of Conn. Bd. of Trustees*, 465 F. Supp. 3d 75, 104

(D. Conn. 2020) (granting summary judgment for the defendant on a Section 1983 disparate

treatment claim because evidence showed that the defendant "had no authority," and "was not

involved, nor could he have been involved" in conduct at issue in litigation).

Here, plaintiffs have not plausibly alleged the existence of comparators that would allow

them to prevail on their selective enforcement claim.  Rather, the Complaint consists of

conclusory allegations that the curfew was enforced in a racially discriminatory manner. *See* ¶¶ 4, 58-61, 66. Plaintiffs' generalized descriptions that the curfew was enforced differently against unidentified "white counterparts" or "white affluent communities" than against Blacks and other people of color is insufficiently detailed to satisfy the pleading standards. *See Rosario v. Town of Mt. Kisco*, 2020 WL 764280, at *6 (S.D.N.Y. Feb. 14, 2020) (dismissing selective enforcement claims because "generalized description of potential comparators . . . is insufficiently detailed for this Court to determine if a jury could plausibly decide that the unidentified comparators are similarly situated to [plaintiff]").

Nor can plaintiffs satisfy the pleading standard with statistics that allegedly show that Blacks and other people of color were disproportionately arrested or issued summons for violating the Curfew Orders (¶ 59), because "statistics alone cannot satisfy the similarly situated requirement for an Equal Protection claim for selective enforcement." *Hsin v. City of New York*, 779 F. App'x 12, 16 (2d Cir. 2019); *see also Hu*, 927 F.3d at 101 ("statistics cannot substitute for specific comparators"); *LeClair v. Saunders*, 627 F.2d 606, 608 (2d Cir. 1980) (the "[m]ere failure to prosecute other offenders is not a basis for a finding of denial of equal protection").[11]

Further, plaintiffs also fail to plausibly allege Governor Cuomo's individual involvement

---

[11] The statistics in the Complaint do not plausibly allege selective enforcement because they are logically incomplete. Plaintiffs allege that Blacks and other people of color comprise only 40% of the City's total population but received nearly 70% of curfew arrests and summonses. ¶ 59. But because plaintiffs did not plead anything regarding the racial composition of the population that was actually protesting or violating the curfew, the cited percentages prove nothing regarding selective enforcement. Moreover, the statistics plaintiffs recite regarding New York City's demographics (which the Court may take judicial notice of as a matter of public record) are incorrect—as of July 1, 2019, white people comprised only 32% of New York City's population and Blacks and other people of color comprised the remaining 68% (*i.e.*, Blacks at 24%; Hispanics at 29%, and Asians at 14%). U.S. Census Bureau, "Quick Facts, New York City, New York," *available at* https://www.census.gov/quickfacts/newyorkcitynewyork (last visited Dec. 10, 2020). Thus, plaintiffs' flawed statistic does not support their claim for selective enforcement of the Curfew Orders.

with respect to selective enforcement of the curfew—or that he possessed the requisite discriminatory purpose. *See, e.g.*, *Porter v. Half Hollow Hills Central Sch. Dist.*, 2019 WL 4696384, at *8 (E.D.N.Y. Sept. 26, 2019) (granting motion to dismiss Equal Protection claim because "[n]one of these allegations support an inference that [defendants] engaged in intentional discrimination"); *Falcon v. City Univ. of New York*, 2016 WL 3920223, at *12 (E.D.N.Y. July 15, 2016) (dismissing a complaint brought under Section 1983 for failing to sufficiently allege individual the defendant's involvement, instead "primarily resort[ing] to group pleading against all of the Defendants . . . a tactic which is expressly disfavored with regard to Section 1983 claims").

Here, the Complaint does not contain *any* specific allegations about Governor Cuomo's role in enforcing the curfew and does not allege that he acted with discriminatory intent (in part because the pleadings do not mention him *at all* with respect to the curfew's enforcement, other than in allegations directed at all "defendants" generally). To the extent the Equal Protection claim includes specific language at all—which it barely does—it refers to the "conduct of *the City* . . . to enforce their illegal Curfew Orders disproportionately. . ." ¶ 162 (emphasis added). Because the Complaint fails to allege Governor Cuomo's role in the selective enforcement of the Curfew Orders with any specificity, the Claim should be dismissed against him.

## V.    Governor Cuomo is Entitled to Qualified Immunity

Should the Court (i) decide that the Complaint states claims against Governor Cuomo in his individual capacity (which it does not) and (ii) decline to declare the curfew constitutional as a matter of law, the claims against Governor Cuomo should nonetheless be dismissed because the Governor is entitled to qualified immunity.

Qualified immunity exists "to ensure that before they are subjected to suit, [government] officers are on notice that their conduct is unlawful." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

The "Supreme Court has repeatedly stressed the importance of resolving immunity questions at the earliest possible stage [of the] litigation.'" *Liberian Cmty. Assoc. of Conn. v. Lamont*, 970 F.3d 174, 186 (2d Cir. 2020) (citing *Wood v. Moss*, 572 U.S. 744, 755 n. 4 (2014)) (brackets in quotation); *see also Poole v. New York*, 2012 WL 727206, at *5-6 (E.D.N.Y. Mar. 6, 2012) (granting motion to dismiss on qualified immunity grounds).  Public officials are entitled to qualified immunity "under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (citing *Reichle v. Howards*, 556 U.S. 658, 664 (2012)).

"For a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  [I]n light of pre-existing law the unlawfulness must be apparent.'" *Occupy Nashville v. Haslam*, 769 F.3d 434, 443-44 (6th Cir. 2014) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (affirming holding that protestors' First Amendment rights were not violated by a city ordinance that denied them the right to 'occupy' a public plaza indefinitely, and thus granting state officials qualified immunity for issuance and enforcement of ordinance).  In other words, "existing precedent must have placed the statutory or constitutional question . . . beyond debate." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014).  Moreover, in identifying the right at issue, a "plaintiff must show with a 'high degree of specificity' that the rule he seeks to apply prohibited the officer's conduct." *Liberian Cmty.*, 970 F.3d at 186 (citing *Mullenix v. Luna*, 136 S. Ct. 305, 309 (2015)).

Neither the Supreme Court nor the Second Circuit have squarely addressed the question of whether in situations of civil unrest (including violence and looting) a temporary, city-wide

21

curfew may be imposed.  Thus, on this basis alone, Governor Cuomo should be entitled to qualified immunity because the constitutional question is not "beyond debate."  The Supreme Court has historically given state and city officials wide latitude during public health emergencies to take measures designed to protect public safety.  *See Jacobson*, 197 U.S. at 25; *see also Liberian Cmty.*, 970 F.3d at 190 (granting public health officials qualified immunity from claims that mandatory Ebola quarantine violated rights of travelers returning from West Africa).  Further, courts throughout the country have recognized the rights of city and state officials to impose limited curfews that may impinge on citizens' constitutional rights in situations of civil unrest.  *See supra* at 11-14.

Thus, even if plaintiffs had sufficiently pled that Governor Cuomo had any role in the issuance and enforcement of the Curfew Orders, there was no clearly established precedent stating that the imposition of a curfew under the factual circumstances present here was unlawful.  Accordingly, the Governor is immune from suit on Counts One, Three, and Four of plaintiffs' Complaint, all of which challenge the imposition of the Curfew Orders.

Governor Cuomo should also be granted qualified immunity with respect to plaintiffs' allegations that their Fourth Amendment rights were violated because they were subject to illegal searches and seizures without any basis in the law, and they were unable to move and travel in their own neighborhoods (Count Two).  ¶¶ 147-59.  Putting aside the fact that, as evidenced by the Emergency Executive Orders governing the curfew, Governor Cuomo had no role in enforcing the curfew, plaintiffs cannot meet their burden with respect to identifying a clearly established right that was violated.  "Qualified immunity affords especial protection to state officials in the Fourth Amendment context."  *Liberian Cmty.*, 970 F.3d at 193.  Plaintiffs must identify a case that presents "similar circumstances" where there was held to be a violation of the

Fourth Amendment.  *Id*.  Because plaintiffs cannot identify a case in which it was clearly established that stopping or arresting an individual for violating a curfew imposed in the midst of a crisis was unlawful, plaintiffs' detentions were reasonable as a matter of Fourth Amendment law.  In these circumstances, Governor Cuomo is entitled to qualified immunity.

## VI.    Plaintiffs' Municipal Liability Claim Against Governor Cuomo Must be Dismissed

To the extent plaintiffs' *Monell* claim (Count Six) is asserted against Governor Cuomo, it must be dismissed as a matter of law because this claim cannot be asserted against an individual defendant.[12]  A *Monell* claim creates municipal liability under Section 1983 if the "deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy or usage of the municipality."  *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978)).  "'*Monell* does not create a stand-alone cause of action,' but rather is a theory under which a *municipality* can be liable for the constitutional torts of its employees, if that municipality's custom or policy led to that violation." *Yousef v. Cnty. of Westchester*, 2020 WL 2037177, at *6 (S.D.N.Y. Apr. 28, 2020) (quoting *Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013)) (dismissing *Monell* claim because the underlying constitutional claims did not survive); *see also Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (noting that *Monell* "*extends* liability to a municipal organization where . . . the policies or customs that it has sanctioned, led to an independent constitutional violation") (emphasis in original).  This claim simply cannot be asserted against Governor Cuomo as an individual defendant.

Further, plaintiffs' allegation that municipality liability should attach based upon Governor Cuomo's alleged role in the Curfew Orders is undermined by the Orders themselves,

---

[12] Because it is unclear which of plaintiffs' claims are asserted against which defendants, Governor Cuomo has addressed this claim out of an abundance of caution.

which make clear that Governor Cuomo (1) did not impose or enforce any of the Curfew Orders

and (2) is not a municipal employee whose conduct can give rise to *Monell* liability for New

York City.  *See Anthony v. City of New York*, 339 F.3d 129, 139 (2d Cir. 2003) (holding

municipal liability did not attach based upon an individual defendant's actions because the

defendant was not "responsible for establishing final government policy").  Thus, plaintiffs'

allegations that the Curfew Orders "were carried out by the aforementioned individual

defendants and subordinate NYPD officers . . . pursuant to the customs, policies, usages,

practices, procedures, and rules of the City of New York and the New York City Police

Department, all under the supervision of defendants DEBLASIO [*sic*] and CUOMO," is squarely

contradicted by the Curfew Orders and City policies that establish that Governor Cuomo does

not supervise the NYPD.  ¶ 170.  Thus, plaintiffs' *Monell* claim must be dismissed against the

Governor.

**VII.   Plaintiffs' Complaint Should be Dismissed With Prejudice as to Governor Cuomo Because Leave to Amend Would be Futile**

Plaintiffs' claims against Governor Cuomo should be dismissed with prejudice.  It is

well-established law that leave to amend need not be granted when any amendment to the

complaint would be "futile" or would not survive a motion to dismiss.  *See Weinreb v. Xerox*

*Bus. Servs, LLC Health & Welfare Plan*, 323 F. Supp. 3d 501, 522 (S.D.N.Y. 2018) (citing

*Hutchinson v. Deutsche Bank Secs. Inc.*, 647 F. 3d 479, 490-91 (2d Cir. 2011)); *Cuoco v.*

*Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (The "problem with [plaintiff's] causes of action is

substantive; better pleading will not cure it.  Repleading would thus be futile.  Such a futile

request to replead should be denied.").

Even if plaintiffs were to replead their Complaint to attempt to cure the conclusory

language and group pleading it contains, they would still be unable to state a claim against

Governor Cuomo in his individual capacity because:  (1) the documents incorporated by reference into the Complaint show that Governor Cuomo did not issue or enforce any of the Curfew Orders (Exs. 1-5); (2) the Curfew Orders and their subsequent enforcement were constitutional; and (3) Governor Cuomo is entitled to qualified immunity for any involvement he had in the challenged conduct.  Because each of these are substantive, legal flaws in plaintiffs' case against the Governor, no amount of repleading will be able to cure them, and plaintiffs should not be granted the opportunity to replead their Complaint.

## <u>CONCLUSION</u>

For the reasons set forth above, Governor Cuomo respectfully requests that the Court dismiss all claims against him in the Complaint with prejudice.


Dated: December 10, 2020
        New York, New York

                                CLARICK GUERON REISBAUM LLP


                                By:    */s/ Nicole Gueron*
                                       Nicole Gueron
                                       Emily A. Weissler
                                       220 Fifth Avenue, 14th Floor
                                       New York, New York 10001
                                       212.633.4310
                                       ngueron@cgr-law.com
                                       eweissler@cgr-law.com

                                *Attorneys for Governor Andrew M. Cuomo*