UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LAMEL JEFFERY, *et al.*,<br><br>          Plaintiffs on Behalf of Themselves and Others Similarly Situated,<br><br>     v.<br><br>THE CITY OF NEW YORK, *et al.*,<br><br>          Defendants. | No. 20 Civ. 02843 (NGG)(RML) |

**GOVERNOR ANDREW M. CUOMO'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF HIS MOTION TO DISMISS THE COMPLAINT**

March 17, 2021

CLARICK GUERON REISBAUM LLP
Nicole Gueron
Emily A. Weissler
220 Fifth Avenue, 14th Floor
New York, NY 10001
212.633.4310

*Attorneys for Defendant Andrew M. Cuomo*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ..................................................................................................................................2

    I.    The Complaint Fails to Allege Governor Cuomo's Personal Involvement ........................2

    II.   The Curfew Orders Are Constitutional and Do Not Need to Satisfy Strict Scrutiny ........4

    III.  Governor Cuomo is Entitled to Qualified Immunity Because Plaintiffs Have Not
         Identified a Clearly Established Right He Violated ............................................................6

    IV.  The Complaint Fails to State an Equal Protection Claim Against Governor Cuomo ........8

    V.   Plaintiffs Abandoned Their *Monell* Claim against Governor Cuomo .............................10

CONCLUSION .............................................................................................................................10

# **TABLE OF AUTHORITIES**

**Cases** Page(s)

*Anderson v. Creighton*,
    483 U.S. 635 (1987) ...................................................................................................7

*Anonymous v. City of Rochester*,
    13 N.Y.3d 35 (2009)...................................................................................................5

*Bright v. Nunn*,
    448 F.2d 245 (6th Cir. 1971) ......................................................................................4

*Brisbane v. Milano*,
    443 F. App'x 593 (2d Cir. 2011) ................................................................................9

*Brown v. City of Oneonta, New York*,
    221 F.3d 329 (2d Cir. 2000) .......................................................................................8

*Butler v. City of Batavia*,
    323 F. App'x 21 (2d Cir. 2009) ..................................................................................9

*Bykofsky v. Borough of Middletown*,
    429 U.S. 964 (1976) ...................................................................................................5

*Canon U.S.A., Inc. v. F&E Trading LLC*,
    2017 WL 4357339 (E.D.N.Y. Sept. 29, 2017) ...........................................................4

*Chamberlain v. City of White Plains*,
    986 F. Supp. 2d 363 (S.D.N.Y. 2013) ........................................................................3

*Clyburn v. Shields*,
    33 F.App'x 552 (2d Cir. 2002)....................................................................................9

*Cole v. City of Memphis*,
    97 F. Supp. 3d 947 (W.D. Tenn. 2015) ......................................................................5

*Crespo v. Rivera*,
    2018 WL 4500868 (S.D.N.Y. Sept. 19, 2018) ...........................................................9

*D.H. v. City of New York*,
    309 F. Supp. 3d 52 (S.D.N.Y. 2018) ........................................................................10

*Dist. of Columbia v. Wesby*,
    138 S. Ct. 577 (2018) .................................................................................................7

*Embry v. City of Cloverport, Ky.*,
   2004 WL 191613 (W.D. Ky. Jan. 22, 2004) ...................................................................5

*Gaffney v. City of Allentown*,
   1997 WL 597989 (E.D. Pa. Sept. 17, 1997) ...................................................................5

*Gagnon v. Ball*,
   696 F.2d 17 (2d Cir. 1982) ............................................................................................3

*Goldoner v. Berliner*,
   770 F.3d 196 (2d Cir. 2014) ..........................................................................................7

*Gonzalez v. Yepes*,
   2019 WL 2603533 (D. Conn. June 25, 2019) ...............................................................2

*I.S. v. Binghamton City Sch. Dist.*,
   2020 WL 5517278 (N.D.N.Y. Sept. 14, 2020) ..............................................................9

*Inturri v. City of Hartford, Conn.*,
   365 F. Supp. 2d 240 (D. Conn. 2006),
   *aff'd* 165 F. App'x 66 (2d Cir. 2006) .............................................................................7

*Liberian Cmty. Assoc. of Conn. v. Lamont*,
   970 F.3d 174 (2d Cir. 2020) ..........................................................................................8

*Manganiello v. Agostini*,
   2009 WL 151724 (S.D.N.Y. Jan. 21, 2009) ..................................................................4

*Martinez v. Sanders*,
   2004 WL 1234041 (S.D.N.Y. June 3, 2004) ...............................................................10

*Morrow v. Meachum*,
   917 F.3d 870 (5th Cir. 2019) .........................................................................................7

*Okin v. Village of Cornwall-on-Hudson-Police Dep't*,
   577 F.3d 415 (2d Cir. 2009) ..........................................................................................9

*Patterson v. City of New York*,
   2017 WL 3432718 (E.D.N.Y. Aug. 9, 2017) ................................................................8

*Pembaur v. City of Cincinnati*,
   475 U.S. 469 (1986) ......................................................................................................2

*Pyke v. Cuomo*,
   258 F.3d 107 (2d Cir. 2001) ..........................................................................................8

*Ramos v. Town of Vernon,*
   353 F.3d 171 (2d Cir. 2003) .....................................................................................5, 7

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
  141 S. Ct. 63 (2020) ...................................................................................................6, 7

*Smith v. Avino*,
  91 F.3d 105 (11th Cir. 1996), *abrogated on other grounds by*
  *Steel Co. v. Citizens for a Better Env.*, 523 U.S. 83 (1998).......................................................4

*Soto v. Schembri*,
  960 F. Supp. 751 (S.D.N.Y. 1997) ...............................................................................3

*Sowell v. Northrop*,
  820 F. Supp. 2d 475 (W.D.N.Y. 2011)..........................................................................4

*Spavone v. New York State Dept. of Corr. Servs.*,
  719 F.3d 127 (2d Cir. 2013) ........................................................................................2

*Traylor v. Hammond*,
  94 F. Supp. 3d 203 (D. Conn. 2015) ............................................................................9

*U.S. v. Armstrong*,
  517 U.S. 456 (1996) .....................................................................................................8

*United States v. Chalk*,
  441 F.2d 1277 (4th Cir. 1971) ............................................................................. Passim

*Williams v. Town of Greenburgh*,
  535 F.3d 71 (2d Cir. 2008) .......................................................................................5, 7

*Ying Li v. City of New York*,
  246 F. Supp. 3d 578 (E.D.N.Y. 2017)..........................................................................2

Defendant Governor Andrew M. Cuomo respectfully submits this reply brief in further support of his motion to dismiss Plaintiffs' Complaint with prejudice.

## PRELIMINARY STATEMENT

In their meritless attempt to keep Governor Cuomo in this lawsuit involving city curfews that he neither issued nor enforced, Plaintiffs rely on inapplicable cases and unpled public statements. This Court should set aside the rhetoric and dismiss all claims against the Governor.

*First*, Plaintiffs essentially concede that they do not plausibly allege the Governor's personal involvement in the issuance or enforcement of the Curfew Orders, but argue that the Complaint should survive nonetheless based on a single unpled press release announcing the Mayor's decision to impose a curfew and on a baseless theory of joint and several liability. Neither argument suffices—especially when the Curfew Orders themselves (and the City Defendants' brief) expressly show that the Mayor alone issued and enforced the Curfew Orders.

*Second*, in the face of persuasive authority that the Curfew Orders were constitutional given their limited scope during a state of emergency, Plaintiffs rely on dicta from cases about non-analogous facts and a 45-year-old certiorari petition *dissent* to argue that these emergency Curfew Orders must be reviewed using strict scrutiny. This caselaw is unavailing: the Complaint itself shows that the Curfew Orders satisfy the applicable, lower standard of review because they were issued by the Mayor in an emergency, in good faith, in response to looting and violence.

*Third*, Plaintiffs' arguments against qualified immunity fail because they rely on the same non-dispositive caselaw. Their opposition does not identify with the requisite specificity a clearly established right violated by the imposition of the curfew.

*Fourth*, regardless of how it is framed, Plaintiffs' allegations of Equal Protection violations in the curfew's enforcement fail as against Governor Cuomo because they do not contain specific allegations of intent and cannot be rescued by faulty statistics.

1

In short, Plaintiffs fail to state any viable claim against the Governor, and their Complaint against him must be dismissed in its entirety.

## ARGUMENT

### I. The Complaint Fails to Allege Governor Cuomo's Personal Involvement

Plaintiffs do not rebut the Governor's argument that the Complaint, consisting of conclusory, group allegations, fails to state a claim against him. Br. 7-11.[1]

The Complaint is devoid of any specific allegations that Governor Cuomo was involved in the issuance or enforcement of the Curfew Orders. *Id*. "'It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Spavone v. New York State Dept. of Corr. Servs.,* 719 F.3d 127, 135 (2d Cir. 2013) (citation omitted). The Court can and should dismiss the Complaint for failing to adequately allege the Governor's personal involvement. *See Ying Li v. City of New York*, 246 F. Supp. 3d 578, 598 (E.D.N.Y. 2017) (dismissing §1983 claim for failing to adequately allege defendants' personal involvement); *Gonzalez v. Yepes*, 2019 WL 2603533, at *7-8 (D. Conn. June 25, 2019) (same).

Plaintiffs attempt to skirt this obstacle by arguing that group pleading suffices because the "governor and the mayor, could . . . both be deemed policy makers for the City," Opp. Br. 26, citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986), for the proposition that "municipalities often spread policymaking authority" among multiple municipal employees. This argument fails, because *Pembaur* states that "liability under § 1983 attaches where—*and only where*—a deliberate choice to follow a course of action is made . . . by the official or officials responsible for establishing *final policy* with respect to the subject matter in question."

---

[1] Governor Cuomo's opening brief is referred to as "Br."; the City Defendants' opening brief is referred to as "City Br."; and Plaintiffs' opposition brief is referred to as "Opp. Br."

*Id*. (emphasis added).  The "New York City Charter vests final policymaking authority in the Mayor and the City Council."  *Soto v. Schembri*, 960 F. Supp. 751, 759 (S.D.N.Y. 1997).  Mayor de Blasio was the sole final decision maker responsible for the Curfew Orders, not the Governor.

Confirming this point, the City Defendants accept responsibility for issuing the Curfew Orders, City Br. 2-4, 9-10 ("Mayor de Blasio issued an Emergency Executive Order declaring an emergency and enacting the curfew"), 11, 16 ("the City defendants enacted a curfew") and, acknowledge the Governor's role was limited to a press *announcement* of the Mayor's curfew, *id.* at 2, 3, 9 ("Mayor de Blasio and Governor Cuomo announced a citywide curfew").

The unpled June 1 press release cannot change the fact that the Mayor enacted the Curfew Orders.  This is not "laughable," as Plaintiffs oddly argue, Opp. Br. 28; it is what they pled—because their Complaint incorporates the Curfew Orders that undeniably establish that the Mayor alone issued and enforced the curfew.  Br. 10.  The press release merely announced the Mayor's issuance of the Curfew Orders; it did not create legal responsibility for the Governor.[2]

Citations to cherry-picked quotations from cases about joint and several liability do not save Plaintiffs' conclusory allegations.  Opp. Br. 27-30.  Collective pleadings without specific allegations of personal conduct cannot survive by asserting joint and several liability—that is a theory of damages recovery, not a pleading device.  *See Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 387 n. 16 (S.D.N.Y. 2013) ("[j]oint and several liability is a method of apportioning damages, not a method of determining liability in the first instance"); *Gagnon v. Ball*, 696 F.2d 17, 19 n. 2 (2d Cir. 1982) ("[a]ll defendants *found liable* for the injury are then jointly and severally liable . . . " ) (emphasis added).  Plaintiffs' cases do not prove otherwise.

---

[2] Plaintiffs prove the weakness of their claim with their reliance on a hearsay press report that the Governor "believed" he could impose a curfew.  Opp. Br. 26-27.  Of course, Plaintiffs cannot know what the Governor believed, nor did they plead it.

3

*See Sowell v. Northrop*, 820 F. Supp. 2d 475, 477 (W.D.N.Y. 2011) (permitting plaintiffs to plead a single sum of damages against six defendants, not adjudicating whether conduct was pled with specificity against each defendant); *Manganiello v. Agostini*, 2009 WL 151724, at *2 (S.D.N.Y. Jan. 21, 2009) (evaluating damages apportionment case *after* jury verdict imposed liability on defendants). Moreover, group pleading on the basis that "identical" claims are asserted against Defendants is inapplicable here, both because the Curfew Orders facially demonstrate that Defendants did not play identical roles and because "constitutional deprivations under § 1983. . . ha[ve] a heightened pleading standard." *Canon U.S.A., Inc. v. F&E Trading LLC*, 2017 WL 4357339, at *7 (E.D.N.Y. Sept. 29, 2017) (citations omitted).

## II.     The Curfew Orders Are Constitutional and Do Not Need to Satisfy Strict Scrutiny

Contrary to Plaintiffs' argument, strict scrutiny does not apply to emergency Curfew Orders issued and enforced in response to looting and violence in the midst of the pandemic.[3]

*United States v. Chalk*, 441 F.2d 1277 (4th Cir. 1971), sets out the recognized standard for judicial review of a curfew in emergency situations; it holds that while the decision to impose an emergency curfew "is not conclusive or free from judicial review," in emergency situations the question for review is whether the "mayor's actions were taken in good faith and whether there is some factual basis" for the imposition of the curfew. 441 F.2d at 1281; Br. 12-13 (citing *Bright v. Nunn*, 448 F.2d 245, 248 (6th Cir. 1971) (curfew responding to violence on college campus lawful because not imposed "in bad faith" or "motivated by politics"); *Smith v. Avino*, 91 F.3d 105, 109 (11th Cir. 1996), *abrogated on other grounds by Steel Co. v. Citizens for a Better Env.*, 523 U.S. 83 (1998) (months-long nighttime curfew imposed after hurricane constitutional because "[i]n an emergency situation, fundamental rights such as the right of travel and free

---

[3] The Governor briefly addresses Plaintiffs' key arguments but refers the Court to the City Defendants' papers, as they bear the burden of establishing their curfew's legality.

4

speech may be temporarily limited or suspended")). It is inherent that "[t]he invocation of emergency powers"—such as the *Chalk* declaration or the Mayor's Emergency Executive Orders here—"necessarily restricts activities that would normally be constitutionally protected." *Chalk*, 441 F.2d at 1280. But "a nighttime curfew is an effective means of controlling or preventing imminent civil disorder," and it was the job of the *Chalk* court (and this one) to decide whether there was a good faith "factual basis for the mayor's decision to proclaim the existence of a state of emergency"—not to apply strict scrutiny or wade into "political debate". *Id.* at 1281-83.

Plaintiffs rely heavily on *Ramos v. Town of Vernon,* 353 F.3d 171 (2d Cir. 2003), which suggested in dicta that a hypothetical adult curfew would violate strict scrutiny. Opp. Br. 5. But *Ramos* did not adjudicate an adult curfew or even an emergency juvenile curfew. *See Ramos*, 353 F.3d 171 (juvenile curfew); *see also Williams v. Town of Greenburgh*, 535 F.3d 71, 75 (2d Cir. 2008) (non-curfew case); *Anonymous v. City of Rochester*, 13 N.Y.3d 35, 45 (2009) (non-emergency juvenile curfew).[4] Indeed, Plaintiffs do not identify *any* case applying strict scrutiny to an emergency, temporary curfew. Surely, Justice Marshall's 1976 dissent from a certiorari denial in *Bykofsky v. Borough of Middletown*, 429 U.S. 964, 964-65 (1976) (non-emergency juvenile curfew), has no relevance or precedential effect. Indeed, *Ramos* does not even mention it. And even Justice Marshall expressly acknowledged, citing *Chalk*, that a curfew *could* survive scrutiny in a "genuine emergency". 429 U.S. at 965.

The Curfew Orders issued and enforced by the Mayor satisfy the *Chalk* standard. Br. 11-

---

[4] The other cases Plaintiffs cite in support of the application of strict scrutiny are from courts outside of the Second Circuit and are factually inapposite. Opp. Br. 5-6; *see, e.g., Gaffney v. City of Allentown*, 1997 WL 597989, at *5 (E.D. Pa. Sept. 17, 1997) (non-emergency juvenile curfew); *Embry v. City of Cloverport, Ky.*, 2004 WL 191613, at *2 (W.D. Ky. Jan. 22, 2004) (non-emergency curfew); *Cole v. City of Memphis*, 97 F. Supp. 3d 947, 960-61 (W.D. Tenn. 2015) (long-standing policy of removing individuals from a particular city street at night).

14; City Br. 5-14. Although Plaintiffs seek to diminish the severity of the multiple crises, their Complaint acknowledges incidents of looting, property destruction, and violence—in the middle of a deadly pandemic. Compl. ¶¶ 14-16. References to COVID-19 are not a "red herring," Opp. Br. 11-12, the Curfew Orders themselves make clear that COVID-19 was an essential backdrop here. *See* Ex. 1 to N. Gueron Decl. (EEO No. 117 recognizing the existing "declaration of a state of emergency in the City of New York due to the threat posed by COVID-19 to the health welfare of City residents," which concerns were amplified because "large gatherings increase the potential for spread of the virus"). The Curfew Orders easily pass constitutional muster.

The *Chalk* standard is consistent with *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 70 (2020).[5] Opp. Br. 12-13. *Roman Catholic* evaluated COVID-19 restrictions that expressly treated houses of worship differently from other institutions, implicating the First Amendment. 141 S. Ct. at 70. By contrast, the Curfew Orders were facially neutral and applied to every citizen other than essential workers. The Governor is not seeking to "cut[] loose" the Constitution during an emergency, Opp. Br. 10 (citing *Roman Catholic*, 141 S. Ct. at 70); he is asking the Court to evaluate the Curfew Orders under the applicable *Chalk* standard that *balances* Constitutional protections with deference to governing officials in volatile situations.

### III. Governor Cuomo is Entitled to Qualified Immunity Because Plaintiffs Have Not Identified a Clearly Established Right He Violated

Even if the Complaint stated viable claims and the curfew was deemed unconstitutional, the claims against the Governor should *still* be dismissed due to qualified immunity.

Plaintiffs have not, and cannot, identify a clearly established right that was violated here.

---

[5] Plaintiffs' factual distinctions about other curfew cases are not persuasive. Opp. Br. 18-20. Focusing on the size of other cities or of New York City's police force is a prohibited attempt to have the Court substitute its judgment for the Mayor's at a moment of crisis. City Br. 13-15.

6

The caselaw they cite acknowledges that for a right to be "clearly established" to preclude qualified immunity, the "unlawfulness must be apparent." *Goldoner v. Berliner*, 770 F.3d 196, 206 (2d Cir. 2014). Plaintiffs claim it was clearly established that the Curfew Orders, imposed by the Mayor amid violent civil unrest and a pandemic, were unconstitutional. But their cases do not support this proposition. Opp. Br. 21-22. *Williams*, *Ramos*, and *Inturri* contain no more than first- or second-hand dicta concerning hypothetical non-emergency adult curfews. *See Ramos*, 353 F.3d at 176 (evaluating non-emergency juvenile curfew); *Williams*, 535 F.3d at 75 (case not about curfews, citing *Ramos*); *Inturri v. City of Hartford, Conn.*, 365 F. Supp. 2d 240, 249 (D. Conn. 2006); *aff'd* 165 F. App'x 66 (2d Cir. 2006) (evaluating challenge to regulation of police officer's tattoos, analogizing to *Ramos* dicta). Clearly established law for qualified immunity purposes must be based on cases deciding truly analogous circumstances, not dicta from cases about different facts. *See Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 589-90 (2018) (the "rule must be settled law . . . it is not enough that the rule is suggested by then-existing precedent"); *Morrow v. Meachum*, 917 F.3d 870, 875 (5th Cir. 2019) ("Dicta is particularly unhelpful in qualified immunity cases where we seek to identify clearly established law.").

Plaintiffs have not identified any case making it "sufficiently clear" that the Curfew Orders were unconstitutional, whether the Court is applying strict scrutiny or the *Chalk* standard. The situation here was unprecedented: no Second Circuit caselaw analyzes the constitutionality of enforcing a limited, emergency curfew in response to violent protests occurring during an existing pandemic state of emergency. Governor Cuomo could not have "underst[ood] that what he is doing violates [a] right" in this context. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). *Roman Catholic* does not change this analysis. Justice Gorsuch's observation that the Constitution is not "cut loose" during an emergency is irrelevant to this qualified immunity

7

analysis—restrictions on houses of worship cannot show "with a high degree of specificity" that there was a "clearly established" rule barring the imposition of a temporary emergency curfew. *Liberian Cmty. Assoc. of Conn. v. Lamont*, 970 F.3d 174, 186 (2d Cir. 2020) (citation omitted).

### IV. The Complaint Fails to State an Equal Protection Claim Against Governor Cuomo

Plaintiffs' Equal Protection claim also fails as a matter of law. Plaintiffs argue that it is not a claim for selective enforcement—but it is pled as such. They argue that their claim includes adequate statistical evidence to establish Defendants had the requisite discriminatory intent—but it does not. Opp. Br 31-35.[6]

*First*, "[t]o state a race-based claim under the Equal Protection Clause, a plaintiff must allege that a government actor intentionally discriminated against him on the basis of his race." *Brown v. City of Oneonta, New York*, 221 F.3d 329, 337 (2d Cir. 2000). There are several theories under which an equal protection claim can be asserted, including a "selective enforcement claim," which is "properly brought by plaintiffs against whom state actors selectively enforced the law in a discriminatory manner." *Patterson v. City of New York*, 2017 WL 3432718, at *9 (E.D.N.Y. Aug. 9, 2017) (Garaufis, J.) (granting motion to dismiss selective enforcement claim because plaintiff "failed to sufficiently allege differential treatment of Jewish versus non-Jewish crime victims"). Selective enforcement claims require comparators because "courts grant special deference to the executive branch in the performance of the 'core' executive function of deciding whether to prosecute." *Pyke v. Cuomo*, 258 F.3d 107, 109 (2d Cir. 2001) (citing *U.S. v. Armstrong*, 517 U.S. 456, 465 (1996)). Plaintiffs' core allegation is that the curfew was selectively enforced against them in a racially discriminatory manner. *See* Compl. p. 13 ("Disproportionate Enforcement of the Curfew Orders"); ¶ 66 (Curfew Order "was enforced

---

[6] Plaintiffs also ignore the Governor's primary argument—that they failed to plead his *personal* involvement in the curfew's enforcement. Br. 19-20.

8

against plaintiff [sic] in a manner that disparately affected them"); ¶ 161 (same).  Further, each named Plaintiff's individualized allegations focus on the allegedly discriminatory enforcement of the curfew.  *Id.* ¶¶ 103-04; 109-110; 116-17.  Plaintiffs cannot avoid their pleading obligations by recharacterizing their claim; a selective enforcement claim must have comparators, which this Complaint lacks.  Br. 17-18.

    *Second*, assuming *arguendo* that Plaintiffs are not claiming selective enforcement, their equal protection claim still must be dismissed because "proof that discriminatory intent was a motivating factor is required."  *Crespo v. Rivera*, 2018 WL 4500868, at *16 (S.D.N.Y. Sept. 19, 2018) (citing *Okin v. Village of Cornwall-on-Hudson-Police Dep't*, 577 F.3d 415, 438 (2d Cir. 2009)).  At the motion to dismiss stage, a Plaintiff must allege intentional discrimination "in a non-conclusory fashion."  *Traylor v. Hammond*, 94 F. Supp. 3d 203, 215 (D. Conn. 2015) (citing *Clyburn v. Shields*, 33 F. App'x 552, 555 (2d Cir. 2002)).  Plaintiffs' allegations must "nudge Plaintiffs' claims of invidious discrimination across the line from conceivable to plausible."  *Brisbane v. Milano*, 443 F. App'x 593, 595 (2d Cir. 2011).  Plaintiffs may "demonstrate that the municipal defendants were aware of the . . . discriminatory conduct," at issue, but they must also "demonstrate a discriminatory intent" in order to survive a motion to dismiss.  *Butler v. City of Batavia*, 323 F. App'x 21, 22-23 (2d Cir. 2009) (affirming dismissal of claims alleging intentional discrimination).  This Complaint is utterly devoid of non-conclusory allegations regarding Governor Cuomo's intent with respect to the Curfew Orders—there is literally no specific allegation that he did anything with discriminatory intent.  Br. 19-20.

    Statistics cannot save the claim.  While "statistics alone may be sufficient to create a plausible inference of discriminatory intent," they "must be sufficiently substantial," and their "usefulness depends on all of the surrounding facts and circumstances."  *I.S. v. Binghamton City*

9

*Sch. Dist.*, 2020 WL 5517278, at *17 (N.D.N.Y. Sept. 14, 2020) (declining to rely upon statistical evidence in complaint, dismissing equal protection claim); *see also D.H. v. City of New York*, 309 F. Supp. 3d 52, 75 (S.D.N.Y. 2018). Here, the sole statistic pled is factually wrong as a matter of public record. Plaintiffs allege that people of color comprise 40% of the City's population yet received nearly 70% of the curfew arrests and summonses. Compl. ¶ 59; Opp. Br. 34. *But the opposite is true*: white people comprise only 32% of the City's population, whereas Blacks and other people of color comprise the remaining 68%.[7] This fact is corroborated by a recent Attorney General's report on the protests, which noted that whites comprise 32% of the New York City population and received 44% of the arrests and summonses in the week the Curfew Orders were in effect.[8] The Court need not accept Plaintiffs' incorrect statistic when it is contradicted by matters of public record. Br. 6-7. Certainly, Plaintiffs' faulty statistical evidence cannot support a claim of intentional race discrimination by the Governor.

### V. Plaintiffs Abandoned Their *Monell* Claim against Governor Cuomo

Governor Cuomo moved to dismiss the *Monell* claim, Br. 23-24, but Plaintiffs' brief is completely silent on this point. Thus, this claim should be deemed abandoned. *See Martinez v. Sanders*, 2004 WL 1234041, at *3 (S.D.N.Y. June 3, 2004).

### CONCLUSION

For the reasons set forth in the Governor's opening brief and herein, Governor Cuomo respectfully requests that the Court dismiss all claims against him with prejudice.

---

[7] Br. 19 n. 11; U.S. Census Bureau, "Quick Facts, New York City, New York," *available at* https://www.census.gov/quickfacts/newyorkcitynewyork (last visited Mar. 17, 2021).

[8] N.Y. State Office of the Attorney General, "Preliminary Report on the New York City Police Department's Response to the Death of George Floyd," at 23 (July 2020), *available at* https://ag.ny.gov/sites/default/files/2020-nypd-report.pdf (last visited Mar. 17, 2021).

Dated: March 17, 2021
      New York, New York

CLARICK GUERON REISBAUM LLP

By:   */s/ Nicole Gueron*
      Nicole Gueron
      Emily A. Weissler
      220 Fifth Avenue, 14th Floor
      New York, New York 10001
      212.633.4310
      ngueron@cgr-law.com
      eweissler@cgr-law.com

*Attorneys for Governor Andrew M. Cuomo*