UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LAMEL JEFFERY, THADDEUS BLAKE, and
CHAYSE PENA, on behalf of themselves and
others similarly situated,

Plaintiffs,

-against-

THE CITY OF NEW YORK, ERIC ADAMS,
Mayor of New York City, in his Official
Capacity, BILL DE BLASIO, Former Mayor of
New York City, Individually, ANDREW
CUOMO, Former Governor of the State of New
York, Individually, and P.O.s JOHN DOE #1-
50, Individually and in their Official Capacity,
(the name John Doe being fictitious, as the true
names are presently unknown),

Defendants.

**MEMORANDUM & ORDER**
**20-CV-2843 (NGG) (RML)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiffs bring this putative class action against New York City
(the "City") and its current Mayor Eric Adams, and former Mayor
Bill de Blasio (individually, "current Mayor" and "former Mayor,"
and, together with the City, the "City Defendants"); the former
Governor of New York State, Andrew Cuomo (the "former Gov-
ernor"); and 50 unnamed New York Police Department officers,
challenging the constitutionality of the temporary curfew im-
posed in New York City in early June 2020. The former Governor
filed a motion to dismiss the complaint in its entirety. (Gov.'s
Mot. to Dismiss (Dkt. 24); Gov.'s Mem. in Supp. of Mot. to Dis-
miss ("Gov.'s Mot.") (Dkt. 25); Reply in Supp. of Gov.'s Mot
("Gov.'s Reply") (Dkt. 28).) The City Defendants filed a partial
motion to dismiss. (City Defs.' Mot. to Dismiss (Dkt. 19); City
Defs.' Mem. in Supp. of Mot. to Dismiss ("City's Mot.") (Dkt. 20);
Reply in Supp. of City's Mot. ("City's Reply") (Dkt. 23).) The

1

court held oral argument via videoconference on April 21, 2021. (Apr. 21, 2021 Min. Entry.)

For the reasons explained below, the former Governor's motion to dismiss the complaint and the City Defendants' partial motion to dismiss certain claims against them are GRANTED.

## I.   BACKGROUND

The following facts are taken from the complaint, which the court accepts as true when deciding a motion to dismiss. *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).

### A.   The New York City Curfew

Beginning in late May 2020, demonstrations against police brutality and racial discrimination arose in New York City and around the globe, triggered in large part by the murder of George Floyd by former Police Officer Derek Chauvin on May 25, 2020. (Compl. ¶¶ 10-11.) The demonstrations in New York City were predominantly peaceful, with some isolated incidences of violence, looting, and property damage. (*Id.* ¶¶ 13-16.)

On June 1, 2020, in response to the widespread protests, a citywide overnight curfew was imposed. (*Id.* ¶¶ 17-18; *see also* June 1, 2020 Exec. Order No. 117 (Dkt. 25-1).) The initial curfew, which, with certain exceptions, barred individuals from leaving their residences, applied from 11:00 p.m. on June 1 to 5:00 a.m. on June 2. (Compl. ¶¶ 17-18.)

On June 2, a second order was issued, which extended the overnight curfew to remain in place until June 7, and which expanded the applicable hours to last from 8:00 p.m. each night to 5:00 a.m. each morning. (*Id.* ¶ 19.) The curfew was repealed on June 6, one day prior to its anticipated expiration. (*Id.* ¶ 19 n.1.)

## B.   The Parties

Defendants are the City of New York, its former Mayor Bill de Blasio, individually, and current Mayor Eric Adams, in his official capacity; the former Governor of the State of New York Andrew Cuomo in his individual capacity;[1] and 50 unnamed New York Police Department ("NYPD") officers. (*Id.* ¶ 2.)

Each named Plaintiff is a New York City resident who was arrested for being outside of his residence while the curfew was in effect. Plaintiffs also allege that, in total, approximately 1,349 individuals were arrested and summonsed for violating the curfew, and that those arrests were made in a racially disparate manner. (*Id.* ¶¶ 54, 58, 66.) Plaintiffs further allege that the curfew resulted in the false imprisonment of millions of New Yorkers by confining them to their homes while it was in effect. (*Id.* ¶¶ 62-63, 67.)

### 1.   Lamel Jeffery

On June 4, Plaintiff Lamel Jeffery was attending a barbeque at Eastern Parkway and Franklin Avenue in Brooklyn, New York. (*Id.* ¶¶ 99-100.) Around 10:00 p.m., he was approached by NYPD officers, who directed him to enter the adjacent building. (*Id.* ¶ 100.) Jeffery, who lived around the corner, responded that he would go home and began walking toward his residence. (*Id.* ¶¶ 100-102.) The officers then "aggressively stopped and tackled him," and "verbally, physically, and mentally abused" him. (*Id.* ¶ 103.) After being taken into custody and held for ten hours, he was released without charges. (*Id.* ¶ 104.)

---

[1] The Complaint asserted claims against Governor Cuomo in his individual and official capacities. On November 23, 2020, the parties entered a stipulation dismissing, with prejudice, the official capacity claims against the former Governor. (Stip. (Dkt. 18).)

### 2.  Thaddeus Blake

On June 5, Plaintiff Blake was outside of his residence near 350 East 143 Street, in Bronx County, New York. (*Id.* ¶¶ 105-106.) At approximately 8:39 p.m., he was approached by NYPD officers who directed him to enter the building. (*Id.* ¶ 106.) He replied that he would retrieve his phone, which was charging nearby, and then would go inside. (*Id.* ¶¶ 106-107.) The officers then "aggressively approached and seized him without probable cause, slamming him to the ground and aggressively handcuffing him behind his back." (*Id.* ¶ 108.) He was taken into custody and held for five hours before he was released with a criminal summons, which Plaintiffs allege will be dismissed in its entirety. (*Id.* ¶¶ 110-11.)

### 3.  Chayse Pena

On June 5, Plaintiff Pena was in his car at West 49th Street and Ninth Avenue in Manhattan. (*Id.* ¶ 112.) He was stopped by several NYPD officers at approximately 10:00 p.m. (*Id.* ¶¶ 113-14.) He explained to the officers that he lived nearby and was looking for parking. (*Id.*) The officers then searched his car and placed him in restraints with his arms behind his back. (*Id.* ¶ 115.) He was taken into custody and held for four hours before he was released with a criminal summons, which Plaintiffs allege will be dismissed in its entirety. (*Id.* ¶¶ 117-18.)

## II.  LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).[2] "A claim has facial plausibility when the plaintiff

---

[2] When quoting cases, and unless otherwise noted, all citations and quotation marks are omitted, and all alterations are adopted.

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Brown v. Omega Moulding Co.*, No. 13-cv-5397 (SJF) (ARL), 2014 WL 4439530, at *2 (E.D.N.Y. Sept. 9, 2014) (*citing Aegis Ins. Services, Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 176 (2d Cir. 2013)). However, "mere labels and conclusions or formulaic recitations of the elements of a cause of action will not do; rather, the complaint's factual allegations must be enough to raise a right to relief above the speculative level." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010). "In assessing the legal sufficiency of a claim, the court may consider those facts alleged in the complaint, as well as documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007). The court may also take judicial notice of media coverage related to the allegations in the Complaint. *See 421-A Tenants Ass'n v. 125 Court St. LLC*, 760 Fed. App'x. 44, 49 n.4 (2d Cir. 2019).

## III. THE FORMER GOVERNOR'S MOTION TO DISMISS

Plaintiffs assert constitutional claims against the former Governor, in his individual capacity, under 42 U.S.C. § 1983. He argues that all claims against him should be dismissed because the complaint fails to plead his personal involvement in the alleged wrongdoing. The court agrees.

### A. Applicable Law

To state a plausible claim for relief under § 1983, a plaintiff must plead "the elements of the underlying constitutional violation directly against the official." *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020). This standard requires the plaintiff to plead

"defendant's personal involvement in the alleged constitutional deprivation" with specific factual support. *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013); *Williams v. City of New York*, 2005 WL 2862007, at *3 (S.D.N.Y. Nov. 1, 2005). Personal involvement may be established by pleading that the defendant directly participated in the challenged conduct, or by alleging that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

Moreover, "[p]leadings that do not differentiate which defendant was involved in the unlawful conduct are insufficient to state a claim." *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 598 (E.D.N.Y. 2017) (citing *Wright v. Orleans Cnty.*, No. 14-cv-0622A, 2015 WL 5316410, at *13 (W.D.N.Y. Sept. 10, 2015) (In a § 1983 case, "[g]roup pleading is insufficient for purposes of Rule 8(a)(2) [of the FRCP] which requires a short and plain statement of the claim showing that the pleader is entitled to relief.").)

### B.  Discussion

Plaintiffs fail to plead the former Governor's personal involvement in the allegedly wrongful conduct. The complaint, which is

183 paragraphs long, references former Governor Cuomo in only three paragraphs, alleging that:

> Bill de Blasio, Andrew Cuomo, the City of New York . . . , the New York City Police Department ("NYPD"), and New York City Police Officers unlawfully imprisoned an entire City by legally prohibiting individuals from leaving their homes for any lawful purpose during certain hours of the day/night and/or lawfully exercising their freedom of movement, freedom of speech, their right to equal protection under the law and their right to be free from search, seizure, and arrest in the absence of probable cause in violation of the U.S. Constitution,

(Compl. ¶ 2);

> At all relevant times defendant ANDREW CUOMO was the Governor of the State of New York and, as such, was a 'policymaker' who influenced, directed, made and enforced the Curfew Orders and policies that are the subject of this action, and who acted in his capacity as Governor, within the scope of his employment as such, and under color of state law,

(*id.* ¶ 83); and

> The acts complained of were carried out by the aforementioned individual defendants and subordinate NYPD officers in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of the City of New York and the New York City Police Department, all under the supervision of defendants DEBLASIO and CUOMO and other ranking officers of said department,

(*id.* ¶ 170) (emphases in original).

The complaint fails to distinguish what, if anything, former Governor Cuomo allegedly did to enact, implement, or enforce the

allegedly unconstitutional curfew. And to the extent that it points to the state as a higher authority or incorporates, by reference, the former Governor's press release concerning the curfew, the allegations against the former Governor remain inadequate. *See Ying Li*, 246 F. Supp. 3d at 599 ("[T]he mere listing of [defendants] as supervisors in a press release is insufficient to create an inference of personal involvement absent further allegations."); *see also Colon*, 58 F.3d at 873-74 ("The bare fact that [the defendant] occupies a high position in [] New York . . . is insufficient to sustain [plaintiff's] claim."). The undifferentiated group pleadings in the Complaint are inadequate to allege either direct participation or policy-making involvement by the former Governor in the alleged violations. All claims against the former Governor are therefore dismissed.

## IV. THE CITY DEFENDANTS' MOTION TO DISMISS

Plaintiffs claim, *inter alia*, that the curfew unconstitutionally burdened their fundamental rights to freedom of movement and freedom of speech, and that it violated Fourth Amendment protections against false arrest and false imprisonment. The City Defendants move to dismiss most of Plaintiffs' claims against them,[3] arguing that the curfew was lawful on its face and that Plaintiffs' arrests were therefore supported by probable cause. (*See* City's Mot. at 5-19.) The City Defendants also seek dismissal of the claims against the former Mayor in his individual capacity

---

[3] Plaintiffs also claim that the curfew was selectively enforced in violation of their constitutional rights. (Compl. ¶¶ 4, 58-61.) In support of that claim, they allege that 70% of the curfew arrests and summonses were issued to Black and minority New Yorkers—over twice as many as for white New Yorkers, although Black and minority New Yorkers comprise only 40% of the City's population. (*Id.* ¶ 59.) The City Defendants do not challenge this claim. (City's Reply at 1 n.1.) Nor do they challenge Plaintiffs' municipal liability claims against the City.

on qualified immunity grounds and for failure to allege his personal involvement in executing the curfew. (*See id.* at 19-22.)

## A. Standard of Review

When considering whether a government action unconstitutionally burdens a movant's rights, the court first "ascertain[s] the appropriate level of scrutiny" to apply. *Ramos v. Town of Vernon*, 353 F.3d 171, 174 (2d Cir. 2003). The City Defendants contend that the curfew was a valid exercise of emergency power under the standard described in *United States v. Chalk*, 441 F.2d 1277 (4th Cir. 1971), *cert. denied*, 404 U.S. 943 (1971), while Plaintiffs argue that the curfew was subject to—and unsustainable under—strict scrutiny review. In the alternative, Plaintiffs argue that, if the court were to accept the City Defendants' proposed standard, the question of whether an emergency existed is a factual dispute which requires discovery and which cannot be resolved on a motion to dismiss. As explained below, the court concludes that heightened scrutiny applies and that the curfew was valid under that review.

### 1.  The Tiers of Scrutiny

In general, laws that do not discriminate based on membership in a suspect or quasi-suspect class and that do not burden fundamental or important rights are subject to rational basis review. *See Ramos*, 353 F.3d at 174-75. "A law will survive this level of scrutiny unless the plaintiff proves that the law's class-based distinctions are wholly irrational." *Id.* at 175.

Intermediate scrutiny—a more searching standard—applies to laws that discriminate based on membership in a quasi-suspect class or that burden an important, though not constitutional, right. *See United States v. Coleman*, 166 F.3d 428, 431 (2d Cir. 1999) (per curiam). "Under intermediate scrutiny, the government must show that the challenged legislative enactment is

substantially related to an important governmental interest." *Ramos*, 353 F.3d at 175.

Strict scrutiny, the most stringent of the three tiers, applies to laws that discriminate based on membership in a protected class or that burden a fundamental right. *See Plyler v. Doe*, 457 U.S. 202, 216-17 (1982). To satisfy strict scrutiny, the government must show that its selected means were narrowly tailored to serve its compelling interest. *Reno v. Flores*, 507 U.S. 292, 301-02 (1993).

### 2. The Fourth Circuit's Deferential *Chalk* Standard

In *Chalk*, the Fourth Circuit upheld arrests executed for violating an emergency curfew that had been imposed by the mayor of Asheville, North Carolina, in response to violent clashes between high school students and police. 441 F.2d at 1278. The court, reviewing the mayor's authority to declare a state of emergency along with the constitutionality of the curfew itself, reasoned that the mayor's action fell within his "broad discretion necessary for the executive to deal with an emergency situation." *Id.* at 1280. Accordingly, the court declared that "the scope of our review in a case such as this must be limited to a determination of whether the mayor's actions were taken in good faith and whether there is some factual basis for his decision that the restrictions imposed were necessary to maintain order." *Id.* at 1281.

### B. Freedom of Movement

#### 1. Level of Scrutiny

Plaintiffs contend, and the court agrees, that the curfew burdened fundamental rights guaranteed by the First, Fourth, and Fourteenth Amendments and, therefore, is subject to strict scrutiny review. Freedom of movement, which includes the freedom to travel within a state, is a well-established fundamental right. *See Williams v. Town of Greenburgh*, 535 F.3d 71, 75 (2d Cir. 2008). Curfews, which innately hold "impeding travel [as]

10

[their] primary objective[s]," are quintessential restrictions on travel. *Att'y Gen. of N.Y. v. Soto–Lopez*, 476 U.S. 898, 903 (1986) ("A state law implicates the right to travel when it actually deters such travel, when impeding travel is its primary objective, or when it uses any classification which serves to penalize the exercise of that right."); *Ramos*, 353 F.3d at 176. And where government action burdens adults' fundamental right to travel, strict scrutiny applies. *Gaffney v. City of Allentown*, No. 97-cv-4455, 1997 WL 597989, at *4 (E.D. Pa. Sept. 17, 1997).

The City Defendants contend that the tiers of scrutiny are inapplicable because of the emergency circumstances of civil unrest in which the curfew was enacted. They ask this court to apply the Fourth Circuit's deferential *Chalk* standard. The court, guided by Second Circuit reasoning in *Ramos*, declines this invitation.[4]

In *Ramos*, the Second Circuit considered the constitutionality of a generally applicable juvenile curfew. 353 F.3d 171. Because the curfew restricted the narrower juvenile right to freedom of movement, the court applied intermediate scrutiny and concluded that

---

[4] Meanwhile, Plaintiffs' discussion of *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020)—to argue for heightened review—and the City Defendants' analogy to *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 38 (1905)—to argue for more deferential review—are both similarly misplaced. Courts agree that *Roman Catholic Diocese*, in which the Supreme Court held that New York's capacity limitations were not neutral toward religion, and, therefore, were subject to—and fatally flawed under—strict scrutiny review, does not extend outside of the Free Exercise context. *See, e.g.*, *Butler v. City of New York*, No. 20-cv-4067 (ER), 2021 WL 4084501, at *5 (S.D.N.Y. Sept. 8, 2021) (collecting cases). Nor does *Jacobson*, in which the Court upheld Massachusetts' smallpox vaccine mandate under what amounted to rational basis review, extend so far beyond its public health context to reach the security interest implicated here. In his *Roman Catholic Diocese* concurrence, Justice Gorsuch underscores the importance of these distinctions, explaining that *Jacobson* was inapposite to the Free Exercise question because it "involved an entirely different mode of analysis, an entirely different right, and an entirely different kind of restriction." 141 S. Ct. at 70 (Gorsuch, J., concurring).

the curfew was unconstitutional. *Id.* at 176. The court reasoned, however, "that were this ordinance applied to adults, it would be subject to strict scrutiny." *Id.*

There is no reason for this court to depart from the Second Circuit's reasoning in *Ramos*. Here, the curfew burdened the well-settled and fundamental right to intrastate travel. Thus, it is subject to strict scrutiny. *See Ramos*, 353 F.3d at 175; *see also Johnson v. City of Cincinnati*, 310 F.3d 484, 502 (6th Cir. 2002) (applying strict scrutiny to ordinance barring certain individuals from entering certain neighborhoods); *Embry v. City of Cloverport, KY*, No. 02-cv-560 (JGH), 2004 WL 191613, at *2 (W.D. Ky. Jan. 22, 2004) (applying strict scrutiny to curfew order). Accordingly, the next question for the court is whether the curfew orders were "narrowly tailored to achieve a compelling governmental interest."[5]

### 2.  Discussion

The government hnas a "legitimate and compelling state interest in protecting the community from crime." *Schall v. Martin*, 467 U.S. 253, 264 (1984); *see also Gaffney*, 1997 WL 597989, at *5 (preventing crime is a compelling state interest). Although Plaintiffs allege that violence, looting, and conflict were not widespread, they concede that episodes of unrest occurred in various neighborhoods in the city. This is adequate to establish the compelling state interest. *See In re New York City Policing During Summer 2020 Demonstrations*, No. 20-cv-8924 (CM) (GWG), 2021 WL 2894764, at *18 (S.D.N.Y. July 9, 2021) (holding that there was a compelling state interest for the curfew). The central inquiry is therefore whether the curfew was narrowly tailored to

---

[5] The court agrees with Plaintiffs' position that, if it were to apply the *Chalk* standard, dismissal would be inappropriate on a motion to dismiss. *See WWBITV, Inc. v. Vil. of Rouses Point*, 589 F.3d 46, 51 (2d Cir. 2009) (whether "a genuine emergency exists is a factual issue").

achieve that end. *See Pyke v. Cuomo*, 567 F.3d 74, 77 (2d Cir. 2009).

Defendants have established an adequately close nexus between the goal of protecting public safety and the enactment of the curfew to further that goal. Here, unlike the generally applicable juvenile curfew in *Ramos*, the duration of the curfew was limited in time and was updated to respond to the changing circumstances in the city: The first Executive Order enacted a one-night curfew, lasting from 11:00 p.m. to 5:00 a.m.; a subsequent Executive Order extended the hours from 8:00 p.m. to 5:00 a.m. and extended the date range to June 7; and a later Executive Order terminated the curfew on June 6, one day prior to its planned expiration. *Cf. Embry*, 2004 WL 191613, at *3 (invalidating curfew that was not time-limited on the grounds that it was not narrowly tailored). For its entire duration, the curfew applied only during nighttime hours, when, Defendants argue, law enforcement faces greater difficulties in preserving public safety. *See also In re New York City Policing During Summer 2020 Demonstrations*, 2021 WL 2894764, at *18. And, with episodes of violence occurring in various parts of different boroughs, the court agrees that the City was justified in enacting the curfew as a citywide measure. Accordingly, the freedom of movement challenge is dismissed.

## C. Freedom of Speech

Plaintiffs also contend that the curfew was an unlawful restriction on speech. The court disagrees. "Expression, whether oral or written or symbolized by conduct, is subject to reasonable time, place, or manner restrictions." *Clark v. Cmty. for Creative Nonviolence*, 468 U.S. 288, 293 (1984). Where, as here, the regulation is imposed "without reference to the content of regulated speech," it is valid as long as it is "narrowly tailored to serve a significant government interest" and "leave[s] open ample alternative channels for communication of the information." *Id.*

Applying that standard, the court concludes that the curfew was a valid content-neutral restriction on the time, place, and manner of Plaintiffs' expression. As explained, the compelling government interest in public safety is well-established, and the temporary curfew, which was modified twice in response to changing circumstances, was narrowly tailored to achieve that end. In addition, the curfew left open "ample alternative channels" for expressive activity. At its most restrictive, the curfew was in effect for no more than nine hours each night, leaving fifteen hours per day in which the curfew was not in effect and in which New Yorkers were not restricted from exercising their speech rights. The court therefore concludes that the curfew did not violate the First Amendment on its face. *See In re New York City Policing During Summer 2020 Demonstrations*, 2021 WL 2894764, at *18 (upholding the June 2020 curfew as a valid restriction on speech).

### D.   Fourth Amendment Search and Seizure

The City Defendants move to dismiss Plaintiffs' Fourth Amendment claims that their arrests were unlawful seizures, arguing that probable cause for violating the curfew existed. (Mot. at 17-19.) "Probable cause . . . constitutes . . . a complete defense to an action for false arrest." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). "In general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Id.* According to Plaintiffs, they were each violating the curfew when they were arrested, and they do not allege that they were permitted to do so by any of the curfew's exceptions. (Compl. ¶¶ 99-101, 105-106, 112-113.) Therefore, their arrests were lawful under the Fourth Amendment. *See Atwater v. City of Lago Vista*, 532 U.S.

318, 354 (2001) (upholding arrests based on probable cause "even [for] a very minor criminal offense").

The City Defendants also argue for dismissal of the claim that the curfew falsely imprisoned millions of New Yorkers in their homes. False imprisonment claims, like false arrest claims, follow the law of the state where the arrest occurred. *See Russo v. City of Bridgeport*, 479 F.3d 196, 203 (2d Cir. 2007). Under New York law, a movant "must show, *inter alia,* that the defendant intentionally confined him without his consent and without justification." *Weyant,* 101 F.3d at 852. Here, the lawfulness of the curfew justifies the alleged false imprisonment. Accordingly, these claims are also dismissed.

### E.  Claims Against the Former Mayor in His Individual Capacity[6]

The former Mayor argues that all claims against him in his individual capacity related to the enforcement of the curfew should be dismissed because Plaintiffs failed to allege his personal involvement on those claims. (*Id.*) As discussed, to be liable under Section 1983, a defendant must have been personally involved in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). "A plaintiff must therefore allege facts that would, if proven, establish the government official's personal involvement in the violation of the plaintiff's rights." *In re New York City Policing During Summer 2020 Demonstrations,* 2021 WL 2894764, at *15.

---

[6] The City Defendants argue that claims against the former Mayor in his individual capacity relating to the enactment of the curfew should be dismissed since he is entitled to qualified immunity (City's Mot. at 19-22.) However, the court need not address this argument since the court has dismissed Plaintiffs' claims regarding the curfew's facial constitutionality.

Plaintiffs failed to accomplish that task here. They cite several public statements made by former Mayor Bill de Blasio concerning the purpose and enforcement of the curfew orders. (Compl. ¶¶ 39, 55, 61.) They also incorporate by reference the orders themselves, (*id.* ¶¶ 17-20, 19 n.1.), which were each signed by the former Mayor (*see* June 1, 2020 Exec. Order No. 117; June 1, 2020 Exec. Order No. 118 (Dkt. 25-2); June 2, 2020 Exec. Order No. 119 (Dkt. 25-3); June 5, 2020 Exec. Order No. 121 (Dkt. 25-4); June 7, 2020 Exec. Order No. 122 (Dkt. 25-5)). However, as explained, it was not unlawful for the former Mayor to enact the curfew. And Plaintiffs have not alleged any facts that would suggest that the former Mayor was personally involved in selectively enforcing the curfews against some New Yorkers and not others. Accordingly, the former Mayor's motion to dismiss the claims against him in his individual capacity are granted.[7]

## V. CONCLUSION

For the reasons explained above, the motions are resolved as follows:

1. All claims against the former Governor are DISMISSED.

2. All claims alleging that the curfew was facially unconstitutional are DISMISSED.

---

[7] On January 20, 2022, the court received Plaintiffs' letter requesting clarification of the court's January 14, 2022 Order to reflect that the substitution of Eric Adams for Bill de Blasio not be extended to individual capacity claims, and requesting that the court's November 12, 2022 Order substituting Kathy Hochul for Andrew Cuomo be rescinded. In light of the court's decision to dismiss the claims against former Governor Cuomo and former Mayor de Blasio in their individual capacities, the court need not further address Plaintiffs' letter.

3. All claims alleging that the arrests were unlawful are DIS-
MISSED.

4. All claims alleging false imprisonment are DISMISSED.

5. All claims against the former Mayor in his individual ca-
pacity are DISMISSED.

6. The selective enforcement and municipal liability claims
are SUSTAINED.

The City Defendants are directed to answer the Complaint within
14 days of this decision. Plaintiffs and the City Defendants are
directed to confer and contact Magistrate Judge Robert M. Levy
for next steps on the remaining claims.

The clerk of the court is respectfully directed to remove former
Governor Cuomo from the case caption.

SO ORDERED.

Dated:     Brooklyn, New York
           January 21, 2022

                                   s/Nicholas G. Garaufis
                                   NICHOLAS G. GARAUFIS
                                   United States District Judge